UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRO MOEN,<br>　　　　　Plaintiff,<br>　　v.<br>SOCIALCHAIN INC., and others,<br>　　　　　Defendants. | Case No. 25-cv-09145-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH LEAVE TO AMEND IN PART**<br><br>Re: ECF 23 |

　　　　Plaintiff Harro Moen alleges seven causes of action against Defendants SocialChain Inc., Nicolas Kokkalis, Chengdiao Fan, Pi Community Company, and Does 1-50 arising from misrepresentations about the cryptocurrency platform's governance and Mainnet launch and an unauthorized transfer of Pi tokens from his secured wallet. Defendants move to dismiss Plaintiff's Complaint or, in the alternative, move for a more definitive statement. For the reasons stated below, this Court GRANTS Defendants' Motion to Dismiss.

**I.　BACKGROUND**

　　**A.　Factual Background**

　　　　Plaintiff alleges the following. Defendants launched Pi Network, a mobile application cryptocurrency platform, in 2019. ECF 1 (Compl.) at 11. Kokkalis's 2019 whitepaper stated that Pi Network had "decentralized governance," an "open blockchain," and "community-controlled" transactions. *Id.* Pi tokens would be transferable upon the

2025 Mainnet launch, which would open the platform for external wallet transfers, exchange listings, and decentralized applications. *Id.* These representations were false because Pi Network was a centralized platform controlled by SocialChain Inc. *Id.* at 11–12.

Plaintiff joined Pi Network in 2020 to mine tokens. *Id.* at 12–13. Over four years, Plaintiff mined 6,541 Pi tokens through clicking on the application's mining button, recruiting users, and running Pi Node software on his laptop. *Id.* at 13. Plaintiff incurred electricity and data costs due to his efforts. *Id.*

In 2021, Defendants sold two billion Pi tokens in undisclosed transactions which deprived Plaintiff of material information regarding the Pi Network. *Id.* at 14–15. In 2022, Defendants listed Pi tokens on numerous sites, but denied involvement in a post on X. *Id.* at 15.

In 2023, Defendants approved Plaintiff's request to migrate his Pi tokens for the Mainnet launch. *Id.* at 13. However, Defendants did not transfer Plaintiff's tokens despite repeated notifications within the mobile application promising migration within three to five months. *Id.* at 15.

In 2024, Plaintiff discovered that 5,137 Pi tokens were transferred from his wallet without authorization. *Id.* at 13. Plaintiff tried to recover his tokens, but Defendants failed to assist his efforts. *Id.* at 14. Plaintiff's remaining tokens have not been migrated to the Mainnet. *Id.*

### B. Procedural Background

On October 24, 2025, Plaintiff filed the Complaint. ECF 1. On December 23, 2025, Defendants filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim or, in the alternative, for a more definitive statement. ECF 23. Plaintiff opposed. ECF 24. Defendants replied. ECF 28.

The parties have consented to magistrate judge jurisdiction. ECF 18, 20.

## II. LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

Plaintiff asserts the following causes of action: (1) violations of sections 5(a) and (c) of the Securities Act; (2) securities fraud under section 10(b); (3) whistleblower retaliation in violation of the Sarbanes-Oxley Act; (4) common law fraud; (5) breach of fiduciary duty; (6) unjust enrichment; and (7) violation of California's Unfair Competition Law (UCL). *See Compl. generally*. The Court will analyze each claim below.

**A.  Plaintiff's First and Second Claims Fail Because Pi Tokens Do Not Constitute a "Security"**

Defendants argue Plaintiff's first and second claims for violations of the Securities Act must fail because Pi tokens do not constitute a security and both claims are predicated on the sale of a security. ECF 23 at 14. Plaintiff contends Pi tokens constitute an investment contract because Plaintiff invested "time and data via mobile mining, akin to money." ECF 24 at 12.

Under the Securities Act, "the term 'security' [ ] include[s] the commonly known

1   documents traded for speculation or investment," such as "investment contract[s]." *SEC v.*
2   *W.J. Howey Co. (Howey)*, 328 U.S. 293, 297 (1946). "The Ninth Circuit has 'distilled
3   *Howey's* definition into a three-part test requiring (1) an investment of money (2) in a
4   common enterprise (3) with an expectation of profits produced by the efforts of others.'"
5   *Real v. Yuga Labs, Inc.*, No. cv 22-8909 FMO (BFMX), 2025 WL 3437389, at *4 (C.D.
6   Cal. Sept. 30, 2025) (quoting *Warfield v. Alaniz*, 569 F.3d 1015, 1020 (9th Cir. 2009)).

7   "The 'investment of money' prong of the *Howey* test requires that the investor
8   commit his assets to the enterprise in such a manner as to subject himself to financial loss."
9   *Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) (citations omitted). Plaintiff
10  concedes he has not invested money in Pi tokens but has input time and internet data which
11  he states is "akin to money." Compl. at 19; ECF 24 at 12. Plaintiff relies on *SEC v.*
12  *Shavers* to support the proposition that commitment of time and resources constitutes an
13  investment of money. *SEC v. Shavers*, No. 4:13-cv-416, 2013 WL 4028182 (E.D. Tex.
14  Aug. 6, 2013). However, *Shavers* merely states that bitcoin *can* be considered a security
15  when investors commit money, which is not the case here. *Id.* at *2. The Court has not
16  located, and Plaintiff has not cited to, any authority suggesting that investments of internet
17  data and time amount to an investment of money or how that would subject Plaintiff to a
18  financial loss.

19  Because Plaintiff has not invested money to satisfy the first prong of the *Howey*
20  test, the Court finds Plaintiff has failed to allege an investment contract as required to state
21  a claim under the Securities Act. Further, as Plaintiff has conceded that he has not
22  invested money, the pleading cannot possibly be cured so the Court will not grant leave to
23  amend. *Lopez*, 203 F.3d at 1127. Accordingly, the Court GRANTS Defendants' motion
24  as to Plaintiff's first and second claims without leave to amend.

25  **B.   Plaintiff's Claim for Whistleblower Retaliation Fails Because He is Not
26         an Employee**

27  Defendants argue that Plaintiff's Sarbanes-Oxley retaliation claim must fail because
28  Pi is not a publicly traded company, Plaintiff is not an employee, and Plaintiff has not

exhausted his administrative remedies. ECF 24 at 25. Plaintiff argues the Sarbanes-Oxley Act extends protection to whistleblowers in financial markets, such as Plaintiff, who report shareholder-like fraud. ECF 24 at 15–16.

The Sarbanes-Oxley Act "prohibits employers of publicly-traded companies from 'discriminat[ing] against an employee . . . for 'provid[ing] information . . . regarding any conduct which the employee reasonably believes constitutes a violation of . . . any provision of Federal law relating to fraud against shareholders.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009) (quoting 18 U.S.C. § 1514A).

The Court agrees with Defendants that Plaintiff cannot state a claim for whistleblower retaliation. The language of the statute makes clear that the Act only applies to employers and their employees. *See* 18 U.S.C. § 1514A. There is no basis to extend the Act to protect Plaintiff, who is not an employee of Defendants. Compl. at 22; ECF 24 at 15–16. Plaintiff's reliance on *Wiest v. Lynch* and *Lawson v. FMR LLC* is unavailing as both cases pertain to employees suing their employers. *Wiest v. Lynch*, 710 F.3d 121, 124 (3d Cir. 2013); *Lawson v. FMR LLC*, 571 U.S. 429, 437 (2014). Moreover, Pi is not publicly-traded and Plaintiff did not exhaust administrative remedies. The pleading cannot possibly be cured so the Court will not grant leave to amend. *Lopez*, 203 F.3d at 1127. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's third claim without leave to amend.

### C. Plaintiff's Common Law Fraud, Unjust Enrichment, and UCL Claims Fail to Comply with Rule 9(b)'s Heightened Pleading Requirement

Defendants argue Plaintiff's allegations do not meet the heightened pleading requirement to support his common law fraud and UCL claims. ECF 23 at 26–29; ECF 28 at 17. Plaintiff argues the Complaint provides specific dates, sources, and transactions to put Defendants on notice and state a fraud claim. ECF 24 at 16–17.

Rule 9(b)'s heightened pleading requirement applies to Plaintiff's fraud, unjust enrichment and UCL claims because all are based on Defendants' allegedly fraudulent conduct involving the decentralized nature of the Pi Network and unauthorized transfer of

5

Plaintiff's Pi tokens. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–4 (9th Cir. 2003) (a claim is "grounded in fraud" where "the plaintiff . . . allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," even "where fraud is not a necessary element of a claim"). Plaintiff concedes that both his unjust enrichment and UCL claims sound in fraud. ECF 24 at 18 (unjust enrichment is a basis for restitution "particularly in cases of fraud"), 19 (UCL prohibits fraudulent business acts).

"Under the federal rules, a plaintiff alleging fraud 'must state with particularity the circumstances constituting fraud.'" *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *4 (quoting Fed. R. Civ. P. 9(b)). "To satisfy this standard, the allegations must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985)). "Thus, claims sounding in fraud must allege 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess*, 317 F.3d at 1106) (citation omitted). "The plaintiff must also plead facts explaining why the statement was false when it was made." *Id.* (citation omitted).

The Complaint alleges "Defendants misrepresented the Pi Network as a decentralized platform in the 2019 whitepaper . . . and app notifications (12 instances, 2021–2023), while operating three centralized validator nodes (PiScan, 2024)" and that Plaintiff relied on those misrepresentations when mining tokens. Compl. at 23. The Complaint further alleges that Defendants knew of their false statements, as "they controlled validators and profited from undisclosed sales." *Id.*

Plaintiff's allegations fall short of Rule 9's heightened pleading standards. Plaintiff must amend the Complaint to add additional facts, including:

6

- Specific misleading statements which he saw and relied upon. Mere reference to app notifications and X posts, without including the statements within said notifications or posts, does not put Defendants on notice of the fraud charged;
- Information explaining why Defendants' statements were false when made;
- Which of the four Defendants are responsible for what specific alleged misconduct; and
- "[T]he who, what, when, where, and how" of the misconduct relating to the transfer of tokens from his wallet.

This list is not exhaustive – Plaintiff must set forth more specific facts so Defendants can reasonably be on notice. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's common law fraud, unjust enrichment, and UCL claims. However, because Plaintiff could allege additional facts to satisfy Rule 9(b), the Court grants Plaintiff leave to amend.

### D. Plaintiff Fails to Allege a Fiduciary Relationship Existed

Defendants argue Plaintiff cannot establish the existence of a fiduciary duty between Pi Network and its' users. ECF 23 at 29. Plaintiff contends courts have recognized fiduciary duties when entities promise to protect user assets, as it creates a relationship where one party reposes trust and confidence in another. ECF 24 at 17.

"In California, '[t]he elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.'" *Fabian v. LeMahieu*, No. 19-cv-00054-YGR, 2019 WL 4918431, at *10 (N.D. Cal. Oct. 4, 2019) (quoting *Gutierrez v. Girardi*, 194 Cal.App.4th 925, 932 (Cal. Ct. App. 2011)). "[B]efore a person can be charged with a fiduciary obligation, he must either undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *Id.* (citation omitted).

The Complaint lacks sufficient facts to establish a fiduciary duty between Defendants and Plaintiff. Plaintiff relies on *Bhatia v. Silvergate Bank*, 725 F.Supp.3d 1079, 1121 (S.D. Cal. 2024), to argue that cryptocurrency exchanges generally have fiduciary duties to their customers. The *Bhatia* complaint included specific references to clauses within the Terms of Service, public representations regarding customer assets, and the solicitations of investments. *Id.* at 1124. So, the *Bhatia* court concluded a fiduciary relationship existed based on contract, representations, and the confidential relationship between the exchange and its users. *Id.* at 1121–22. Here, Plaintiff makes some reference to the Terms of Service but did not attach the full agreement or provide excerpts of the relevant portions. *See Compl. generally.* Plaintiff also does not explain how the Defendants owe fiduciary duties regarding migration of Plaintiff's tokens, the undisclosed sale of two billion tokens, or the 2022 Pi token listings. Without more, the Court cannot find that a fiduciary relationship existed.

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim with leave to amend.

## IV. CONCLUSION

Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's first, second, and third claims without leave to amend and his fourth, fifth, and sixth claims with leave to amend. Plaintiff must amend the Complaint by February 5, 2026. Plaintiff may not add additional parties or claims without leave of the Court. If Plaintiff does not file a timely amended complaint, the Court will enter Judgment for the Defendants and close the case.

**IT IS SO ORDERED.**

Dated: January 15, 2026

_____
NATHANAEL M. COUSINS
United States Magistrate Judge