FOLSOM JACKSON O'MALLEY LLP
KENNETH P. NABITY (Bar No. 287927)
EMILY MCATEE (Bar No. 359005)
ESMERALDA MENDOZA (Bar No. 362617)
500 Capitol Mall, Suite 1550
Sacramento, CA  95814
Telephone:     (916) 661-5700
Facsimile:     (916) 661-5701
knabity@folsomjackson.com
emcatee@folsomjackson.com
emendoza@folsomjackson.com

Attorneys for Defendants
SOCIALCHAIN INC., PI COMMUNITY COMPANY, NICOLAS KOKKALIS, and
CHENGDIAO FAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARRO MOEN, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOCIALCHAIN INC., PI COMMUNITY COMPANY, NICOLAS KOKKALIS, CHENGDIAO FAN, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.  5:25-cv-09145-NC<br><br>Assigned for all purposes to Magistrate Judge Nathanael M. Cousins<br><br>Complaint Filed: October 24, 2025<br>Trial Date: None Yet Set<br><br>**DECLARATION OF KENNETH P. NABITY IN SUPPORT OF DEFENDANTS SOCIALCHAIN INC., PI COMMUNITY COMPANY, NICOLAS KOKKALIS, AND CHENGDIAO FAN'S RESPONSE TO THE ORDER TO SHOW CAUSE REGARDING SECOND AND THIRD AMENDED COMPLAINTS** |

1

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

I, Kenneth P. Nabity, declare as follows:

1.      I am an attorney licensed to practice law in all courts of the State of California and am an attorney at the law firm of Folsom Jackson O'Malley LLP, attorneys of record for Defendants SocialChain Inc. ("SocialChain"), Pi Community Company ("Pi"), Nicolas Kokkalis ("Kokkalis") and Chengdiao Fan ("Fan") (collectively, "Defendants") in this matter. I make this declaration in support of Defendants' Response to Plaintiff Harro Moen's Response to the Order to Show Cause Regarding Second and Third Amended Complaints. Each statement contained in this declaration is true of my own personal knowledge, except as to those matters that are stated on information and belief, and as to those matters, I believe them to be true. I would testify to the statements made in this declaration if called to do so.

2.      On April 14, 2025, Plaintiff's counsel sent Plaintiff's initial demand letter.  In that letter, Plaintiff's counsel stated that his client "filed a draft class action complaint in the United States District Court for the Northern District of California (Harro Moen v. SocialChain Inc., et al., Case No. To Be Assigned). This complaint is not yet finalized; it represents an initial framework of our legal position, and we intend to amend it with additional plaintiffs, defendants, claims, and evidence as our investigation and discovery process advances."  Plaintiff described his potential claims.  Plaintiff's counsel also demanded "immediate consent to advertise this lawsuit across various platforms."   To resolve the matter, Plaintiff demanded a "lump sum payment of $10,000,000 to be disbursed to Mr. Moen."  If Defendants did not comply, Plaintiff's counsel also threatened "significant regulatory scrutiny" and "potential liability exceeding tens of billions of dollars."  Plaintiff's counsel threatened to expand the litigation to include "RICO claims" with "enhanced damages." A true and correct version of that letter is attached hereto as **Exhibit A**.

3.      Though Mr. Tafur's demand letter described a "filed" class action complaint, my office was unable to locate any such "filed" complaint.  As such, I emailed Mr. Tafur to inquire whether a complaint had, in fact, been filed.  Mr. Tafur responded that "no class action complaint has been formally filed" but suggested that he had prepared a "prepared pleading." Mr. Tafur added that Defendants should "respond substantially" or else Plaintiff may advertise in "The Arizona Republic, The New York Times . . . online platforms (for example, Reddit communities like

2

r/PiNetwork, X with hashtags #PiNetwork and #PiFraud), and direct outreach." A true and correct copy of that email correspondence is attached hereto as **Exhibit B**.

4. On May 13, 2025, my office provided a formal response to Plaintiff's demand letter. In Defendants response letter, Defendants denied any involvement in the alleged "unauthorized transfer" of Plaintiff's Pi tokens, denied and explained the absurdity of Plaintiff's claim of "unauthorized exchange listings," and noted that Plaintiff's valuations reliance on "bogus" valuations were legally and factually baseless. Defendants also addressed the specific potential claims, noting, among other issues: that Plaintiff failed to identify any potential misstatement or omission; that Plaintiff's claim for whistleblower retaliation in violation of the Sarbanes-Oxley Act failed because such claim "only applies to protect whistleblower *employees* of companies registered under section 12 of the Securities Exchange Act," neither of which apply; that Plaintiff asserted "no harm from validators or any such representation…"; that Plaintiff's loss of Pi tokens was user error; and that Plaintiff failed to identify any "benefit that Pi retained to the detriment of" Plaintiff. A true and correct copy of Defendants' response letter is attached hereto as **Exhibit C**.

5. Five months later, and without any substantive response, Plaintiff filed this action. (ECF 1.)

6. Plaintiff's Complaint included reference to Defendants' responses, an admission that his counsel was put on notice of the various deficiencies. (ECF 1 ¶ 7.) Plaintiff's Complaint, however, failed to address or improve the claims. Again, Plaintiff's *individual* Complaint threatened to that it was "laying the groundwork for a potential class action." Plaintiff again sought permission to advertise "to form a class under FRCP 23(a) and (b)(3) . . . through media, online platforms, and cryptocurrency news outlets." (ECF 1 Prayer for Relief ¶ G.).

7. Defendants moved to dismiss Plaintiff's Complaint on December 23, 2025. (ECF 23.)

8. Plaintiff's Opposition to Defendants' Motion to Dismiss, filed January 6, 2025, argued that Plaintiff's Complaint "adequately pleads all causes of action under the applicable standards, including the heightened requirements for securities and fraud claims." (ECF 24.)

///

3

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

9. This Court granted Defendants' Motion to Dismiss on January 15, 2026. (ECF 29.) In that Order, this Court ordered that Plaintiff "must amend the Complaint by February 5, 2026" and detailed numerous deficiencies in Plaintiff's Complaint.

10. On February 5, 2026, Plaintiff filed his First Amended Complaint. (ECF 31.) Plaintiff claimed to attach the Terms of Service, but failed to do so. In that First Amended Complaint, Plaintiff included the following statements:

18. In 2023, Defendants approved Plaintiff's migration request following his KYC verification on December 22, 2022, but deliberately delayed the process despite app promises, such as the January 15, 2023 notification: "Complete KYC and migrate to Mainnet within 3-6 months for full access." Compl. at 13, 15. These delays rendered Plaintiff's tokens illiquid and valueless, breaching fiduciary duties arising from Defendants' control over user assets and promises of secure handling, analogous to the breach recognized in Kelly v. Coinbase Global, Inc., No. 3:2021cv06010 (N.D. Cal. 2021), where the court found fiduciary duties in cryptocurrency platforms based on user trust in asset management and security representations. In 2024, 5,137 Pi tokens were transferred from Plaintiff's wallet without consent via

20. Defendants' ToS (Ex. A, §12: "Migrated Pi is deposited into the user's designated Mainnet Wallet"; §4: "Users are responsible for maintaining the security of their account passwords, and Pi Network employs measures to protect user assets") created fiduciary duties by undertaking to act for users' benefit in handling/migrating tokens, reposing trust (e.g., duty to disclose sales/listings as material to asset value; duty to timely migrate per promises; duty to prevent unauthorized transfers

- 10 -

via secure controls). This forms a confidential relationship per Bhatia v. Silvergate Bank, 725 F.Supp.3d 1079, 1121 (S.D. Cal. 2024), where similar asset promises imposed duties.

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

11.     Plaintiff's new allegations were a surprise. I personally reviewed the docket for the *Kelly* matter (cited above) and the Terms of Service. I was unable to locate any quote in Pi Terms of Service that "Pi Network employs measures to protect user assets," and noted that the First Amended Complaint failed, as promised, to attach the Terms of Service. In the *Kelly* matter, it appears that there was no substantive decision rendered whatsoever – rather, the only order simply granted the parties' stipulation to arbitrate the case.

12.     On February 9, 2026, I emailed Mr. Tafur to seek information explaining these deficiencies. In response, on February 11, 2026, Mr. Tafur confirmed that the alleged case cite "quite right was error and was a vestige of an earlier draft based on some early research." Mr. Tafur also admitted that the Terms of Service quotes were not "word for word." A true and correct copy of those communications are attached hereto as **Exhibit D**.

13.     That same day, Plaintiff filed his Second Amended Complaint without leave to amend from the Court and without Defendants' written agreement. (ECF 32.)

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

14. Consistent with Mr. Tafur's confirmation, the Second Amended Complaint replaced the prior case reference with a New York decision, and adjusted the Terms of Service allegations, as follows:

> based on user trust in asset management and security representations. This duty has been recognized in the context of co-ventures where one party exercises dominant control over share business assets, leading to fiduciary obligations to act primarily for the others benefit. *Matter of Lehan v. Montgomery 2025 NY Slip Op 52146(U))*; citing *Meinhard v. Salmon, 249 NY 458 [1928]*) the relationship between plaintiff and defendant is very similar if not analogist to the relationship between plaintiff and defendant is very similar if not analogist to the relationship between two con-ventures as plaintiff was to benefit from mining PI coins so was defendant benefiting from this activity as well. The significant control exercise by Pi Network over the assets especially prior to their migration to Mainnet wallet gives rise to a fiduciary duty owed to plaintiff by defendant.
>
> 21. Defendants' ToS (Ex. A, §12: ". If you have passed SocialChain's KYC process ("KYC") and fulfilled other relevant requirements as set forth in these Terms, you may obtain Pi cryptocurrency in your Mainnet wallet ("Mainnet Wallet") on the Pi Mainnet Blockchain (the "Pi
>
> - 10 -

> Mainnet Blockchain") (such migrated Pi is referred to herein as "Migrated Pi")."; §4: "[Y]ou are responsible for keeping and maintaining the security of your password", and Pi Network employs measures to protect user assets") created fiduciary duties by undertaking to act for users' benefit in handling/migrating tokens, reposing trust (e.g., duty to disclose sales/listings as material to asset value; duty to timely migrate per promises; duty to prevent unauthorized transfers via secure controls). This forms a confidential relationship per Bhatia v. Silvergate Bank, 725 F.Supp.3d 1079, 1121 (S.D. Cal. 2024), where similar asset promises imposed duties.

15. On February 25, 2026, Defendants moved to dismiss the Second Amended Complaint and filed a Request for Judicial Notice concerning the Whitepaper. (ECF 33-35.)

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

16.    On March 11, 2026, Plaintiff filed his Opposition to Defendants' Motion to Dismiss. (ECF 37.) At the same time, Plaintiff filed his Third Amended Complaint without leave to amend from the Court and without Defendants' written agreement.

17.    Plaintiff's Opposition to the Second Amended Complaint included the following statements:

> 9. Whether leave to amend should be granted, where Plaintiff possesses extensive evidence not included in the SAC due to prior counsel's failure to incorporate it.

> 92. Amendment Is Not Futile. Plaintiff possesses extensive evidence that was not included in

- 22 -

> the SAC—not because it does not exist, but because prior counsel did not incorporate it. This evidence includes blockchain forensic data showing the KIDS wallet was created by Defendants' own infrastructure wallet, claimable balance transaction records demonstrating automated system-level execution, the complete financial timeline from the McPhilip derivative lawsuit, exchange coordination evidence including direct email confirmations from Huobi and BitMart confirming founder-initiated listings, HTX's published collaboration with Pi Network, and founder wallet cashout data from mainnet launch.

18.    On March 11, 2026, I sent another email to Mr. Tafur, as shown in Exhibit D. In that email, I inquired about the inclusion of blame toward "prior counsel" given that Mr. Tafur has been the only counsel in this matter, ever, and further noted that the Third Amended Complaint was filed in violation of Rule 15.

19.    That same day, Mr. Tafur wrote back that his "staff has clearly acted in error here." A true and correct copy of these emails is attached hereto as **Exhibit E**.

///

///

7

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO
PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

20.     On March 12, 2026, without any notice or agreement of any sort, Plaintiff filed a second Opposition to Defendants' Motion to Dismiss the Second Amended Complaint, erroneously identified as a "Reply." (ECF 39.)  That second Opposition removed Paragraph 8 referencing "prior counsel," but did not remove new Paragraph 91's reference, as follows:

> 91. Amendment Is Not Futile. Plaintiff possesses extensive evidence that was not included in the SAC—not because it does not exist, but because prior counsel did not incorporate it. This evidence includes blockchain forensic data showing the KIDS wallet was created by Defendants' own infrastructure wallet, claimable balance transaction records demonstrating automated system-level execution, the complete financial timeline from the McPhilip derivative lawsuit, exchange coordination evidence including direct email confirmations from Huobi and BitMart confirming founder-initiated listings, HTX's published collaboration with Pi Network, and founder wallet cashout data from mainnet launch.

21.     That same night, I wrote to Mr. Tafur to inquire about this erroneous filing.

22.     Also, on March 12, 2026, this Court issued an order to show cause ("OSC") why the Second Amended Complaint and Third Amended Complaint should not be stricken. (ECF 38.) That OSC set Plaintiff's response deadline for March 17, 2026, the day prior to Defendants' deadline to file a Reply in support of its Motion to Dismiss the Second Amended Complaint.

23.     On March 13, 2026, I followed up with Mr. Tafur concerning his second Opposition. That same day, Mr. Tafur responded by email to note that the second Opposition was filed "with the correction that made no substantive change to any of the arguments and was filed in good faith to correct an error because it was the wrong draft that was filed."  Mr. Tafur added: "The filing of the third amendment [sic] complaint was an error by my office due to a miscommunication."  A true and correct copy of this correspondence is attached hereto as **Exhibit F**.

24.     Plaintiff filed his Response to the Court's Order to Show Cause on March 17, 2026. (ECF 41.)  In that Response, Plaintiff makes a number of bizarre assertions.  In the second introductory paragraph, the Response claims to include a "Declaration of Mario Tafur (filed concurrently herewith) – the filing did not include a declaration. (ECF 41 at 2.)  The Response also makes no reference to the First Amended Complaint.  Plaintiff claims that the Second Amended

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

Complaint is "Plaintiff's first good-faith attempt to meet the heightened pleading requirements." (ECF 41 ¶ 4.)  Plaintiff contends that the Third Amended Complaint "further refined the pleading to achieve perfect compliance."  (ECF 41 ¶ 5.)  Plaintiff suggests the existence of a "pending" motion for leave, though Plaintiff never filed such motion prior to its response.  (ECF 41 ¶ 6.) Plaintiff amplifies that same assertion by referencing a "paragraph-by-paragraph evolution detailed above and *by the detailed chart incorporated by reference from the original Motion*."  (ECF 41 ¶ 8 (emphasis added).)  Defendants are unaware of any such "chart."  Plaintiff also suggests that the "demanding particularity requirements" derive from the Court's Order, rather than the Federal Rules of Civil Procedure or PSLRA.  (ECF 41 ¶ 10.)

25.    Defendants filed their Reply in support of their Motion to Dismiss the Second Amended Complaint on March 18, 2026.  (ECF 42.)

I declare under penalty of perjury under the laws of the State of California that the foregoing statements are true and correct. Executed this 24th day of March 2026, in Groveland, California.

*/s/*                             

Kenneth P. Nabity

DECLARATION OF KENNETH P. NABITY ISO DEFENDANTS' RESPONSE TO PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE