FOLSOM JACKSON O'MALLEY LLP
KENNETH P. NABITY (Bar No. 287927)
EMILY MCATEE (Bar No. 359005)
ESMERALDA MENDOZA (Bar No. 362617)
500 Capitol Mall, Suite 1550
Sacramento, CA 95814
Telephone: (916) 661-5700
Facsimile: (916) 661-5701
knabity@folsomjackson.com
emcatee@folsomjackson.com
emendoza@folsomjackson.com

Attorneys for Defendants
SOCIALCHAIN INC., PI COMMUNITY COMPANY,
NICOLAS KOKKALIS, and CHENGDIAO FAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HARRO MOEN, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOCIALCHAIN INC., PI COMMUNITY COMPANY, NICOLAS KOKKALIS, CHENGDIAO FAN, and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 5:25-cv-09145-NC<br><br>Assigned for all purposes to Magistrate Judge Nathanael M. Cousins<br><br>Complaint Filed: October 24, 2025<br>Trial Date: None Yet Set<br><br>**DEFENDANTS SOCIALCHAIN INC., PI COMMUNITY COMPANY, NICOLAS KOKKALIS, AND CHENGDIAO FAN'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITIVE STATEMENT [FRCP 12(b)(6) AND FRCP 12(e)]**<br><br>**DATE:** May 20, 2026<br>**TIME:** 11:00 a.m.<br>**LOCATION:** Courtroom 5 |

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ADDITIONAL PROCEDURAL BACKGROUND ........ 2

III. LEGAL ARGUMENT ........ 3

**A.** Plaintiff's Fraud-Related Claims Fail. ........ 3

**1.** All Fraud-Related Claims Fails Because Plaintiff Has Not Pled Facts With Sufficient Particularity. ........ 3

**2.** All Fraud-Related Claims Fails Because Plaintiff Does Not Plead Material Misrepresentations With Facts That The Statements Were False When Made. ........ 4

**3.** Plaintiff's Request To Revive His Dismissed Securities Claims Is Meritless. ........ 7

**4.** All Fraud-Related Claims Fails Because Plaintiff Cannot Establish Loss Causation. ........ 8

**5.** Plaintiff's Unjust Enrichment Claim Fails. ........ 9

**6.** Plaintiff's Unfair Competition Law Claim Fails ........ 10

**B.** Plaintiff's Breach Of Fiduciary Duty Claim Fails Because Plaintiff Cannot Establish The Existence Of A Fiduciary Duty ........ 10

**C.** Plaintiff's "Unauthorized Transfer" Allegations State No Other Claim ........ 12

**D.** Plaintiff's "Objection" to the Request For Judicial Notice Is Not In Dispute. ........ 13

**E.** The Court Should Grant Defendants' Motion To Dismiss Without Leave To Amend. ........ 13

IV. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bhatia v. Silvergate Bank*
No. 3:23-cv-01406-RBM-BLM (S.D. Cal. Mar. 20, 2024) ........ 12

*Lee v. Foris DAX, Inc.*
No. 24-CV-06194-WHO, 2025 WL 2578239, at *3 (N.D. Cal. Sept. 5, 2025) ........ 12

*Lloyed v. CVB Fin Corp.*
811 F.3d 1200 (9th Cir. 2016) ........ 8

*Sollberger v. Wachovia Sec., LLC*,
No. SACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) ........ 3

*Sonoma County Ass'n of Retired Employees v. Sonoma County*
708 F.3d 1109 (9th Cir. 2013.) ........ 14

## STATE CASES

*Beckwith v. Dahl*
205 Cal. App. 4th 1039 (2012) ........ 9

*Chazen v. Centennial Bank*
61 Cal. App. 4th 532 (1998) ........ 12

*City of Atascadero v. Merrill Lynch, Pierce Fenner & Smith, Inc.*
68 Cal. App. 4th 445 (1998) ........ 12

*City of Oakland v. Oakland Raiders*
83 Cal. App. 5th 458 (2022) ........ 10

*Ghirardo v. Antonioli*
14 Cal. 4th 39 (1996) ........ 10

*Herbert v. Lankershim*
9 Cal. 2d 409 (1937) ........ 11

*Kurtz-Ahlers, LLC v. Bank of Am., N.A.*
48 Cal. App. 5th 952 (2020) ........ 11

*Rossberg v. Bank of Am., N.A.*
219 Cal. App. 4th 1481 ........ 9

*Wolf v. Superior Court*
107 Cal. App. 4th 25 (2003) ........ 11

**STATUTES**

Unfair Competition Law, Business & Professions Code § 17200, et seq. ................................ 1, 11

**OTHER AUTHORITIES**

Revised Uniform Fiduciary Access to Digital Assets Act, Cal. Prob. Code §§ 870, et seq .......... 12

# I. INTRODUCTION

Plaintiff Harro Moen's Third Amended Complaint ("TAC"), like each of his complaints before it, contains a multitude of implausible, inconsistent, and irrelevant allegations, but fails to state any claim for relief. Plaintiff's Opposition to Defendants' latest Motion to Dismiss (the "Motion") contains no credible response to Defendants' Motion, and instead somehow adds even more implausible, inconsistent, and irrelevant allegations that were not pled in the TAC.

Since filing this case, Plaintiff has been forced to acknowledge numerous falsehoods or misrepresentations that formed the foundation for his claims. Now forced to abandon those falsehoods, his previously insufficient claims are even less viable. Though Plaintiff originally alleged that Defendants' plans for a decentralized system were false because Defendants failed to disclose that they operated three validator nodes, Plaintiff has been forced to acknowledge that claim was frivolous given Defendants' express statements that they would operate validator nodes. Though Plaintiff originally alleged that Defendants' Terms of Service created a fiduciary duty, Plaintiff has been forced to acknowledge that the Terms of Service do not support his allegations and instead often expressly disclaim his prior representations; now, he is forced to argue that the Court should *ignore* the Terms of Service because they are so damaging to him. Along the way, Plaintiff has violated this Court's Orders and applicable rules. In this recent Opposition, Plaintiff baselessly requests "leave to amend" his dismissed securities claims.

This Court previously granted Defendants' Motion to Dismiss. Following amendment, Plaintiff's claims fail for the same reasons. Plaintiff's fraud-related claims fail because Plaintiff cannot meet the heightened pleading standard, fails to identify any actionable misrepresentation, and cannot establish loss causation. Plaintiff's unjust enrichment and Unfair Competition Law claims are either derivative, fail for other reasons, or both. As to Plaintiff's breach of fiduciary duty claim, Plaintiff abandons his prior, frivolous attempt to argue that the Terms of Service establish a contractual fiduciary duty, and again fails to identify argument or authority to support the existence of a fiduciary duty. Plaintiff fails to allege facts to support any potential claim for relief, whether presently pled or not.

The Court should grant Defendants' Motion to Dismiss without leave to amend.

## II. ADDITIONAL PROCEDURAL BACKGROUND

As previously noted, this Court's January 15, 2026 Order granted Defendants' Motion to Dismiss, and required Plaintiff to file an amended complaint by February 5, 2026. (ECF 29.) Plaintiff filed a First Amended Complaint on February 5, 2026. (ECF 31.) After Defendants' counsel alerted Plaintiff's counsel to certain hallucinations in that First Amended Complaint, Plaintiff unexpectedly filed a Second Amended Complaint on February 11, 2026. (ECF 32.)

Defendants then moved to dismiss the Second Amended Complaint on February 25, 2026. (ECF 33.) Plaintiff opposed Defendant's motion to dismiss on March 11, 2026, and simultaneously filed a Third Amended Complaint in violation of Federal Rule of Civil Procedure 15. (ECF 36, 37.)

On March 12, 2026, the Court issued an Order to Show Cause ("OSC") why the Second and Third Amended Complaints should not be stricken. (ECF 38.) In Plaintiff's response to the OSC, he stated that the Second Amended Complaint (his *third* filed complaint in this matter) was "Plaintiff's first good-faith attempt to meet the heightened pleading requirements." (ECF 41 ¶ 4.) Plaintiff argued that his TAC achieved "perfect compliance." (ECF 41 ¶ 5.)

Defendants responded with a substantiated record of numerous falsified facts and authority, coupled with evidence of notifications to Plaintiff's counsel of the same, as well as Plaintiff's counsel's acknowledgment that the TAC "was an error by my office due to a miscommunication." (ECF 43.) Defendants also identified numerous fabricated statements *in Plaintiff's response* that were verifiably untrue. (*Id.*) The Court permitted leave to file the TAC, while admonishing Plaintiff "to strictly follow this Court's Orders and not make any false statements in his briefings." (ECF 44.) The Court concluded: "Should Plaintiff continue to violate court orders and proffer fabricated statements, the Court will consider whether sanctions are appropriate." (*Id.*)

/ / /

/ / /

/ / /

/ / /

## III. LEGAL ARGUMENT

### A. Plaintiff's Fraud-Related Claims Fail.

#### 1. All Fraud-Related Claims Fails Because Plaintiff Has Not Pled Facts With Sufficient Particularity.

Consistent with the applicable law, this Court's Order required that Plaintiff provide "specific" and "additional" facts to meet the heightened pleading requirement for fraud claims. Plaintiff's TAC compounds the deficient shotgun approach through the addition of irrelevant and disconnected facts, including over 100 pages of extraneous exhibits. Rather than link particular statements to harm, Plaintiff relies on an ever-changing list of paraphrased statements with which he disagrees, none of which contain any breached promises and none of which were or are false.

Plaintiff's Opposition makes no effort to clarify his approach. Instead, Plaintiff adds even more irrelevant facts not included in the TAC.[1] Plaintiff again relies on lists to claim fraud, including by simply listing all four Defendants under the "Who," listing various paraphrased statements under the "What," listing a number of dates from March 2019 to April 2024 under the "When," and so on. The heightened pleading standard requires specific facts connecting causal links – Plaintiff's TAC is instead a pleading the "overwhelm[s] defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations," which is "unacceptable." *See Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).

It is worth remembering that this Court gave Plaintiff a non-exhaustive roadmap to meet the heightened pleading standard, which Plaintiff is unable to meet. For example, Plaintiff continues to paraphrase his *understanding* of statements "without including the statements . . ." (ECF 29 at 7.) Based on the TAC and Plaintiff's Opposition, Defendants are still left wondering

[1] Though Plaintiff makes no effort to explain how or why any of these allegations are relevant to any issue before the Court, Plaintiff nonetheless includes the following allegations in his Opposition that do not appear to be included in the Third Amended Complaint: new irrelevant and implausible details from former litigation (ECF 50 ¶¶ 7-9); discussion of the "Fireside Token Feature" (*id.* ¶ 10); new irrelevant and implausible details about the exchange listings, including alleged promotions and contests involving cash and Porsche prizes (*id.* ¶¶ 11-13); new references to portions of the Whitepaper (*see*, *e.g.*, *id.* ¶¶ 19-20).

which of the dozen statements over five years that Plaintiff paraphrases constitutes the alleged misrepresentations – and there are no allegations to explain that Plaintiff's understanding is justifiable, much less to connect any specific allegation to any harm suffered.

Plaintiff also provides no information "explaining why Defendants' statements were false when made." (ECF 29 at 7.) Plaintiff's TAC only generically alleges that certain unspecified statements were false when made (ECF 36 ¶ 79 ("Defendants knew they intended to maintain exclusive control over all validator nodes.")), and the Opposition repeats that representations of decentralization "were false when made because Defendants designed and operated the centralized validator nodes from the outset and never intended to relinquish control" (ECF 50 ¶ 20). These are not factual averments – these are bare recitations of the standard.

Though Defendants' Motion went through each of the alleged misrepresentations found at various points in the TAC, Plaintiff's Opposition again lumps alleged statements from 2019, 2021, and 2022 together. On its face, Plaintiff's TAC and Opposition establish that Plaintiff cannot meet the heightened pleading standard.

**2. <u>All Fraud-Related Claims Fails Because Plaintiff Does Not Plead Material Misrepresentations With Facts That The Statements Were False When Made.</u>**

As noted, Defendants' Motion explains why each of the alleged misrepresentations is not actionable.[2] Plaintiff fails to credibly refute any of Defendants' arguments.

i. Plaintiff's Claims Related To "Decentralization" Are Baseless.

Plaintiff continues to present baseless theories concerning alleged promises of decentralization. The core of Plaintiff's fraud claims still rest on a frivolous premise: that Defendants' claims of decentralization "were false when made because, from launch, the platform was centralized under Defendants' control through three validator nodes . . . ." (ECF 36 (TAC) ¶ 75 ("The 2019 whitepaper's 'decentralized governance' claim" was "false, as three validator

[2] Plaintiff spends pages discussing allegations of "scienter" that describe prior litigation and documents in the public record, some of which is included in the TAC. Though none of these allegations are relevant, it is nonetheless shocking that Plaintiff repeats many of these falsehoods from the TAC in the Opposition given that Defendants' counsel alerted Plaintiff's counsel of the falsehoods weeks prior to Plaintiff's Opposition.

nodes controlled all transactions"); *see also* ECF 46 at 15 n. 1 (listing numerous prior allegations consistent with this theory).) In its Motion, Defendants presented the actual Whitepaper wherein Defendants state expressly that Pi would operate its own validator nodes.

In Opposition, Plaintiff instead suggests that identifying a statement that directly undermines Plaintiff's claim is "selective quoting" to argue that Defendants "disclosed permanent centralized control." (ECF 50 ¶ 19.) Plaintiff's argument is increasingly frivolous. First, Plaintiff offers no defense of his current and prior frivolous allegations, which are directly contradicted in the same document that he alleges includes a misrepresentation. Second, in support of this position, Plaintiff only points to a separate Whitepaper section from years later that states the same thing Pi said in early 2019: that Pi encourages decentralization by opening up node operation to Pi users. (*Id.*) Plaintiff does not and cannot allege that either statement is false, was false when made, or that he reasonably relied on it to his detriment. Indeed, Plaintiff alleges that, consistent with those statements, he personally "operated node software." (ECF 36 ¶ 81; *see also id.* ¶ 8.) Third, Plaintiff now seems to argue that Defendants "never intended to relinquish control" of the validator nodes. (ECF 50 ¶ 20.) Plaintiff's alleges no facts in support of this new, conclusory allegation.

ii. Plaintiff Does Not Allege Facts That Defendants' Denials of Involvement With Unauthorized Exchanges Were False or That He Relied On Them.

Plaintiff spends inordinate time frivolously arguing that Defendants secretly engaged in exchange listings of Pi tokens, while he and 60 million other app users were unable to access those exchanges. Plaintiff fails to state facts to establish that Defendants' denials were false, and similarly fails to allege that he relied on the statements to his detriment.

As Plaintiff alleges, third-party exchanges began claiming to list Pi tokens. In response, Defendants publicly warned its users that the "Unauthorized Exchange Listings" (Plaintiff's header) were "fake." (ECF 36 ¶ 66.) More specifically, Defendants confirmed that there was "no external connectivity provided" to transfer tokens to the exchanges at that time, and that Defendants were not "affiliated with and hasn't authorized any exchange listing. Such listings may not operate on real Pi. Participation may result in loss." (ECF 50 ¶ 17.)

First, Plaintiff presents no coherent or credible argument that his allegations plausibly state that the denials were false. Indeed, the underlying allegations are either implausible or frivolous given that **every** document Plaintiff submitted in support of his claim either does not support him or actually confirms that the exchanges were unable to allow deposits or withdrawals of Pi tokens. (*See* ECF 36-1 at Ex. E-1 at PDF 2 ("HTX Announcement" appears to be a random blog post that claims that Pi was added to Huobi, while also noting "neither market has disclosed information about how deposits and withdrawals are handled."); *id.* at PDF 3 (stating that deposit and withdrawals requires that the main network be "upgraded successfully."); ECF 36-1 at E-2 (unintelligible interaction with Huobi that only makes clear that Pi tokens cannot be withdrawn, suggesting that there is no actual Pi token on the exchange); ECF 36-1 at E-3 (Bitmart in October 2024 confirms that they "have yet to receive any updates of when the Pi Network deposit feature will be available."); ECF 36-1 at E-4 (BitMart does not confirm that it listed "real tokens sent to Bitmart by the core team," and instead only confirms that trading was suspended and resumed at various times); ECF 36-1 at E-5 (HTX "Press Release" states that the dates for deposit and withdrawal are "TBD" or to "Please stay tuned," and that "United States users are not supported for trading PI").)

Plaintiff's statement that these exchanges "confirmed in writing" that the listings were "coordinated with and supported by the project team" is a frivolous assertion. (ECF 50 ¶ 3.) Indeed, as Plaintiff himself admits, "A token cannot be listed on an exchange without a supply being provided." (ECF 50 ¶ 27.) This means that the statements from these exchanges that they do not have a deposit or withdrawal function only imply ***that there was no Pi token supply*** on those listings in December 2022, and thus no coordination. It is equally implausible to infer that Defendants would disclaim all listings "fake" while attempting to profit off of them.

Plaintiff now adds additional allegations, such as trading contests the third-party exchanges held involving a Porsche. Plaintiff makes the risible argument: "Defendants' motion does not provide an explanation for how these promotions occurred if the exchange listings were unauthorized and Defendants had no affiliation with the listing exchanges." (ECF 50 ¶ 61.) Not only are the allegations of "promotions" raised in the Opposition *for the first time*, the suggestion

that Defendants can or should speak for how or why a third-party, unaffiliated exchange did something makes little sense.

Second, as Plaintiff appears to concede, the TAC states no facts suggesting that he reasonably relied on Plaintiff's listings denials in a way that caused him harm. To the extent Plaintiff's fraud claim relies on Defendants' denial of affiliation with exchange listings, Plaintiff's claim fails.

iii. Plaintiff's Claims of "Unfulfilled Commitments" Are Nonsense.

In true shotgun form, Plaintiff continues to list various operational "commitments" that have not come to be. Defendants addressed each of the alleged misrepresentations from the TAC in its Motion, and Plaintiff's copying and pasting of his lists without additional facts or argument leaves nothing for Defendants to reply to.

**3. <u>Plaintiff's Request To Revive His Dismissed Securities Claims Is Meritless.</u>**

Plaintiff appears to ask the Court to revive his dismissed securities claims. The Court should do no such thing, and instead consider imposing sanctions consistent with its prior admonition.

By way of background, this Court dismissed Plaintiff's two securities claims without leave to amend. (ECF 29 at 3-4.) Plaintiff then filed a First Amended Complaint *and* Second Amended Complaint. (ECF 31 & 32.) Though some residual reference to the prior securities claims were not deleted, Plaintiff did not premise any theories or claims on securities laws. (*Id.*) Plaintiff then filed a Third Amended Complaint. (ECF 36.) In the TAC, Plaintiff claims that Plaintiff "does not assert standalone securities claims," but then faults Defendants for failing to "register the tokens with the SEC or any state regulator" or to "provide the disclosures required of securities issuers." (*Id.* ¶¶ 53-57.) Plaintiff then somehow alleges that the California Digital Financial Assets Law is not in effect, but that Defendants have violated the not-yet-in-effect law. (*Id.*)

Defendants argued in their Motion that Plaintiff appeared to be repackaging the defunct securities claims in the common law fraud claim, in violation of the Court's Order. Plaintiff's response seems to argue, without authority and contrary to the law, that anti-fraud provisions in

securities laws "apply to material misstatements regardless of whether an investment contract exists." (ECF 50 ¶ 40.) Plaintiff then suggests that the Court's ruling dismissing without leave "was also entered without the benefit of the complete investment record," and thus "leave to amend to fully plead this theory is warranted." (*Id*.)

In one fell swoop, Plaintiff disregards the Court's order dismissing his securities claims without leave to amend (ECF 29), disregards the Court's recent admonition to "strictly follow this Court's Orders" (ECF 44), and goes from arguing that there is no standalone claim in the TAC (ECF 36) to a request in his Opposition to Defendants' Motion to Dismiss (not via Rule 15 motion) for leave to amend based solely on his or his counsel's own failure to "fully plead" the theory. Then, Plaintiff's "new" or additional allegations he claims will salvage those dismissed claims are neither new nor would they change the analysis: Plaintiff does not (and cannot) allege that he invested in a "SAFE" instrument; does not and cannot allege any issue with any prior investments (none of which he participated in); and does not and cannot allege that Defendants' prior investments required SEC registration (i.e., that no exemption applied). Plaintiff's request is meritless and the Court should consider sanctions for Plaintiff's repeated violation of its Orders and the rules.

### 4. <u>**All Fraud-Related Claims Fails Because Plaintiff Cannot Establish Loss Causation.**</u>

Plaintiff's fraud-related claims also fail because Plaintiff cannot establish loss causation. Plaintiff concedes that he must demonstrate that his losses were "caused by [Defendants'] *misrepresentations*, rather than some intervening event." (ECF 33 (Mot.) at 11, citing *Lloyed v. CVB Fin Corp*., 811 F.3d 1200, 1209 (9th Cir. 2016) (emphasis added).) Thus, even if Plaintiff could establish justifiable reliance on a misrepresentation (which he cannot), "no liability attaches if the damages sustained were otherwise inevitable or due to *unrelated causes*." *Rossberg v. Bank of Am., N.A.*, 219 Cal. App. 4th 1481, 1499, <u>as modified on denial of reh'g</u> (Sept. 26, 2013) (quoting *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1064 (2012).)

Plaintiff does not and cannot connect the alleged unauthorized transfer of his tokens to any alleged misrepresentations. Indeed, Plaintiff does not discuss Defendants' alleged

misrepresentations in his argument on the issue at all. (ECF 50 ¶ 41.) Rather, Plaintiff argues, without authority, that an intervening event "refers to an independent act by a *third party* breaking the causal chain," not a transfer through channels Defendants operate. (*Id.*) Even if Plaintiff's assertion were supported by authority (and it is not), the point remains that he must establish that his harm was caused by the alleged misrepresentations, not some other reason.

Plaintiff's remaining claims that he suffered "wasted time and costs" due to Defendants' alleged unfulfilled promises also fail. (ECF 36 ¶ 82; ECF 50 ¶ 32.) Plaintiff's "wasted time" identifies no economic loss – he is, after all, retired, and fails to suggest that he had any other opportunities. Plaintiff also fails to allege that any of the costs were incurred *as a consequence of* his participation with Pi Network – as Plaintiff admits, the $1,200 in "costs" is "electricity and data costs ($25/month x 48 months)." (ECF 36 ¶ 59.) Plaintiff does not allege that he would have avoided electricity and internet charges had he not used Pi's app. Plaintiff's TAC fails to establish that those costs, even if incurred, were not inevitable.

Likewise, though it is unclear, Plaintiff's alleged reliance on a denial of affiliation with exchanges, two years after he started mining Pi, equally fails to establish causation. Specifically, Plaintiff does not allege that he took any additional action, beyond what he had already been doing for two years, as a result of the post. Nor does he allege any specific harm from his reliance on that (true) denial.

Based on Plaintiff's own admissions, the Court can and should conclude that the claim fails as a matter of law and grant the motion without leave to amend.

**5. <u>Plaintiff's Unjust Enrichment Claim Fails.</u>**

Plaintiff's Opposition fails to coherently respond to Defendants' Motion. As the Court correctly noted, which Plaintiff does not dispute, the unjust enrichment claim is grounded in fraud, and thus the heightened pleading requirement applies. (ECF 29 at 5-6.) Plaintiff cannot meet that requirement for the same reasons described above.

Plaintiff also fails to plead facts showing that Defendants received any benefit from him, or that he has a superior legal or equitable right to any benefit Defendants allegedly received from others. Plaintiff does not allege that he conferred money, tokens, property, or any other benefit

on Defendants. Plaintiff's allegations rest on a legally irrelevant series of (sometimes frivolous) allegations concerning third-party investments, exchange listings, and Pi's hiring of employees. Plaintiff pleads no ownership interest, contractual entitlement, or priority right to any alleged sale or other proceeds, even if they occurred.

Plaintiff appears to argue that he, a retiree who opened and tapped an application, is one of 60 million *users* who should be treated as an employee, owner, or founder. Where a benefit is provided by someone other than the plaintiff, restitution is available only if the plaintiff pleads facts establishing a superior legal or equitable right to the disputed assets. *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 479 (2022). Allegations that Defendants received a windfall, or that Plaintiff believes Defendants acted unfairly, are insufficient as a matter of law. *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). Here, Plaintiff seems to suggest, without any legal or factual basis, that all 60 million users, including himself, should receive any funds Defendants received through operation of a business. Plaintiff's argument is absurd and should be rejected.

Further, Plaintiff's loss from "unauthorized transfer" or illiquidity only describes purported harm to Plaintiff, not a benefit unjustly retained from him by Defendants. Because Plaintiff's Opposition does not address the applicable law and fails to plead facts establishing entitlement to restitution, his unjust enrichment claim fails and should be dismissed.

**6. <u>Plaintiff's Unfair Competition Law Claim Fails</u>**

Plaintiff's UCL claim fails. Plaintiff's Opposition concedes that the UCL claim is premised on the existence of a fraud claim. Plaintiff does not identify any separate conduct that would support the unlawful, unfair, or fraudulent prongs of the UCL. Because Plaintiff's fraud claim fails, the UCL claim fails with it.

**B. <u>Plaintiff's Breach Of Fiduciary Duty Claim Fails Because Plaintiff Cannot Establish The Existence Of A Fiduciary Duty.</u>**

Plaintiff's TAC fails to identify a fiduciary relationship. Plaintiff's assertion that Defendants owed duties of loyalty and care based on platform operation or alleged "custodial control" over network infrastructure or tokens is unsupported by any case law. Courts have

repeatedly rejected efforts to convert ordinary commercial or contractual relationships into fiduciary ones. The traditional fiduciary relationships Plaintiff invokes, such as trustee-beneficiary or agent-principal, are not alleged here. *See Wolf v. Superior Court*, 107 Cal. App. 4th 25, 30 (2003). Even banks that hold and transfer customer funds do not owe fiduciary duties to depositors, underscoring the absence of any such duty here. *See Kurtz-Ahlers, LLC v. Bank of Am., N.A.*, 48 Cal. App. 5th 952, 956 (2020).

Plaintiff cites no authority to support his baseless "custodial control" argument. Indeed, Plaintiff's cited authority is the same inapposite cases from Plaintiff's prior Opposition: *Herbert v. Lankershim*, 9 Cal. 2d 409 (1937), only generally discusses a jury instruction discussing a "confidential relation," and does not support extension of such a duty based on any theory of control; *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998), as modified on denial of reh'g (Jan. 6, 1999), only confirms that a broker owes a fiduciary duty to a trust's beneficiaries when that broker colludes with the trustee, to whom the broker indisputably owed a fiduciary duty.[3]

Plaintiff's TAC is a narrower and weaker version of his original allegations and argument, which this Court properly dismissed. In his original Complaint and Opposition to Defendants' first Motion to Dismiss, Plaintiff alleged and argued that "Defendants held fiduciary roles through their centralized control over Pi tokens . . . , **coupled with** explicit promises in promotional materials and Terms of Service . . . " (ECF 24 ¶ 27 (emphasis added); *see also* ECF 24 ¶ 7 (fiduciary duty existed based on "Defendants' control over users' tokens **and** representations of trust.") (emphasis added); ECF 1 ¶ 75 (alleging fiduciary duty based on "[Terms of Service]

---

[3] Plaintiff's Opposition appears to have appropriately ceased arguing authority he has previously cited, all of which either is wholly inapplicable or supports Defendants' positions, including: *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 541 (1998) (which held only that a plaintiff's claims failed because banks have *no duty* "to police fiduciary accounts so as to prevent breaches of fiduciary duty."); *Bhatia v. Silvergate Bank*, No. 3:23-cv-01406-RBM-BLM (S.D. Cal. Mar. 20, 2024) (which the Court discussed in its Order); *Lee v. Foris DAX, Inc.*, No. 24-CV-06194-WHO, 2025 WL 2578239, at *3 (N.D. Cal. Sept. 5, 2025) ("It is uncontested that Crypto.com, as a cryptocurrency exchange, is not held to the same high fiduciary standard to its users as a bank would be."); and California's Revised Uniform Fiduciary Access to Digital Assets Act, Cal. Prob. Code §§ 870, et seq. (which governs conservators, agents, or trustees tasked with handling deceased users' digital accounts).

Section 14 (security obligations) **and** their control over validators") (emphasis added).)

As this Court noted in its Order dismissing this claim, though Plaintiff made "some reference to the Terms of Service," he failed to attach the Terms of Service or provide relevant excerpts, or explain how Defendants owed any duties otherwise. (ECF 29 at 8.)

Plaintiff finally attached the Terms of Service to the Second Amended Complaint. (ECF 32.) In Defendants' Motion to Dismiss the Second Amended Complaint, Defendants argued not only that Plaintiff was misrepresenting the Terms of Service (then before the Court), but also that the Terms of Service said the *opposite* of what Plaintiff asserted in many places. (ECF 33.) Plaintiff's TAC was filed concurrently with his Opposition. (ECF 36 & 37.) In it, Plaintiff made a dramatic concession that the fiduciary duty resulted from Defendants' "exclusive, unilateral control over Plaintiff's assets," while alleging that the Terms of Service could not "disclaim" those duties. (ECF 36 ¶ 86.) Plaintiff's Opposition here goes a step further to confirm this shift: after originally representing to the Court that the Terms of Service *support* the existence of a fiduciary duty, Plaintiff now suggests that he should be permitted to *void* the Terms of Service based on economic duress to preserve the duty (which he still cannot establish). (ECF 50 ¶ 46.)[4]

In other words, the Court previously held that Plaintiff failed to establish the existence of a fiduciary duty based on control *plus* Terms of Service promises. Plaintiff now asks the Court to find the existence of a fiduciary duty based on control *minus* Terms of Service disclaimers, while offering the same facts. Following a series of fabrications, misstatements, dizzying pivots, and inconsistent positions, Plaintiff has confirmed that his breach of fiduciary duty claim fails and is incapable of amendment.

### C. <u>Plaintiff's "Unauthorized Transfer" Allegations State No Other Claim.</u>

Plaintiff spends substantial time discussing his theory about the transfer of his tokens, but fails to connect it to any actionable harm or to Defendants. Defendants have been correct that all of the underlying actions were accomplished by Plaintiff's account, whether due to user error or

---

[4] Neither Plaintiff nor his counsel offer any explanation for what appears to be an acknowledgment that Plaintiff's prior representations and argument concerning the Terms of Service were fabricated and frivolous.

otherwise, not Defendants.[5]

Plaintiff's own documentation attached to the TAC provides ample evidence to render his allegations implausible under any theory, whether asserted or not. Plaintiff makes a big deal of the idea that Defendants' "Pi Foundation Wallet 2" "created" the KIDS wallet. But Plaintiff's own documentation does not support any negative inference. There is no credible allegation that Defendants caused the creation of an alternative wallet. Indeed, the same documents establish that Defendants' "Pi Foundation Wallet 2" "created" the ZEAT wallet in the same way, even though Plaintiff admits he created that wallet – the user initiates the creation, and Pi's tools are merely the conduit. (*See* ECF 36-1 at Ex. W-3 (both the KIDS and ZEAT wallets "created" by "GCOR…TEAM").) Additionally, as Plaintiff's evidenced chats make clear, Plaintiff admits that he "got another wallet" because concern of a "developer" affiliated with a "hacker org . . . freaked me out so I *recreated my wallet* thinking my Pi would migrate there . . . ." (ECF 36-2 at Ex. B (Plaintiff is user "DaCovid").) The inconsistency between Plaintiff's contemporaneous documents and his bloated allegations is stark.

Plaintiff's allegations and documentation identify no wrongdoing by Defendants related to the loss of his Pi tokens. To the contrary, Plaintiff's documentation only suggests, consistent with Defendants' explanations, that Plaintiff's own conduct caused his harm.

**D. <u>Plaintiff's "Objection" to the Request For Judicial Notice Is Not In Dispute.</u>**

It does not appear that Plaintiff is actually objecting to Defendants' Request for Judicial Notice, notwithstanding the section header. Plaintiff just argues that the Court should consider the entire Whitepaper when analyzing Plaintiff's claims. To the extent Plaintiff merely "objects" to preserve his ability to argue the Whitepaper, there is no dispute.

**E. <u>The Court Should Grant Defendants' Motion To Dismiss Without Leave To Amend.</u>**

Plaintiff does not set forth any facts or legal authority to support leave to amend. Courts may decline to grant leave to amend if amendment would be futile, including if there are "repeated failure to cure deficiencies by amendments previously allowed." *Sonoma County Ass'n*

---

[5] Defendants cannot argue facts outside the pleading at the motion to dismiss stage, and will not do so here.

*of Retired Employees v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013.)

Plaintiff's claims fail as a matter of law, and thus there is no possibility that amendment could cure the fatal defects. Plaintiff's TAC only magnifies the underlying deficiencies through inclusion of myriad extraneous allegations, including hundreds of pages of extraneous documents that support nothing. Because amendment would be futile, the Court should deny leave to amend.

## IV. CONCLUSION

Defendants respectfully request that the Court grant its Motion to Dismiss without leave to amend, and dismiss the Complaint in its entirety.

DATED: April 30, 2026

FOLSOM JACKSON O'MALLEY LLP

By: */s/ Kenneth P. Nabity*
KENNETH P. NABITY
EMILY MCATEE
ESMERALDA MENDOZA
Attorneys for Defendants
SOCIALCHAIN INC., PI COMMUNITY COMPANY, NICOLAS KOKKALIS, and CHENGDIAO FAN