United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HARRO MOEN,

          Plaintiff,

    v.

SOCIALCHAIN INC., and others,

          Defendants.

Case No. 25-cv-09145-NC

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

Re: ECF 46

Plaintiff Harro Moen alleges four causes of action against Defendants SocialChain Inc., Nicolas Kokkalis, Chengdiao Fan, Pi Community Company, and Does 1-50 arising from misrepresentations about the cryptocurrency platform's governance, the platform's public launch (referred to as the Mainnet), and an unauthorized transfer of Pi tokens from his secured wallet. Defendants move to dismiss Plaintiff's third amended complaint (TAC) or, in the alternative, move for a more definitive statement. Defendants argue the TAC fails to comply with Rule 9(b)'s heightened pleading standard for fraud claims or plead a fiduciary relationship between the parties.

For the reasons stated below, this Court GRANTS Defendants' Motion to Dismiss. Plaintiff is not granted leave to amend because (1) he already amended twice without the Court's permission and in violation of its' prior Order, and (2) he cannot cure the TAC's deficiencies with further amendment.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff alleges the following.  Defendants launched Pi Network, a mobile application cryptocurrency platform, in 2019.  TAC (ECF 36) ¶ 1.  The 2019 Whitepaper stated that Pi Network would be governed by the community and built through decentralized participation.  *Id.* ¶¶ 1, 14.  Pi tokens would be transferable upon the 2025 Mainnet launch, which would open the platform to the public.  *Id.* ¶ 2.  These representations were false because Pi Network was a centralized platform controlled by Defendants.  *Id.* ¶ 14.

Plaintiff joined Pi Network in 2020 then created a wallet and began to mine tokens.  *Id.* ¶ 59.  Over four years, Plaintiff mined 6,541 Pi tokens through clicking on the application's mining button, recruiting users, and running Pi Node software on his laptop.  *Id.*  Plaintiff incurred electricity and data costs due to his efforts.  *Id.*

In 2021, Defendants sold two billion Pi tokens in undisclosed transactions which deprived Plaintiff of information.  *Id.* ¶ 15.  In 2022, Defendants listed Pi tokens on numerous sites, but denied involvement in a post on X.  *Id.* ¶¶ 3, 15.

In 2023, Defendants approved Plaintiff's request to migrate his Pi tokens for the Mainnet launch.  *Id.* ¶¶ 16, 60.  However, Defendants did not transfer Plaintiff's tokens as promised despite repeated notifications within the mobile application assuring migration within three to five months.  *Id.*

In 2024, Plaintiff discovered that 5,137 Pi tokens were transferred from his wallet without authorization.  *Id.* ¶¶ 39, 61.  The tokens were transferred to a wallet created by Defendants.  *Id.*  Plaintiff tried to recover his tokens, but Defendants failed to assist his efforts.  *Id.* ¶ 62.  Plaintiff's remaining tokens have not been migrated to the Mainnet.  *Id.* ¶ 63.

### B.    Procedural Background

On October 24, 2025, Plaintiff filed the Complaint.  ECF 1.  Defendants filed a Motion to Dismiss Plaintiff's Complaint for failure to state a claim or, in the alternative,

United States District Court
Northern District of California

2

for a more definitive statement. ECF 23. The Court granted Defendants' Motion to Dismiss Plaintiff's whistleblower retaliation and Securities Act claims without leave to amend and Plaintiff's breach of fiduciary duty and fraud-based claims with leave to amend. ECF 29. Plaintiff filed a first amended complaint. ECF 31. Plaintiff then filed a second amended complaint, without leave of Court, which Defendants moved to dismiss. ECF 32, 33. Plaintiff then filed a TAC without leave of Court. ECF 36. The Court admonished Plaintiff to adhere to its' Orders but allowed the TAC to proceed. ECF 44. Defendants moved to dismiss the TAC. ECF 46. Plaintiff opposed. ECF 50. Defendants replied. ECF 51.

The parties have consented to magistrate judge jurisdiction. ECF 18, 20.

## II.    LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.    DISCUSSION

Plaintiff's TAC asserts the following causes of action: (1) common law fraud; (2)

breach of fiduciary duty; (3) unjust enrichment; and (4) violation of California's Unfair Competition Law (UCL).   The Court will analyze each claim below.

### A.    Plaintiff's Common Law Fraud, Unjust Enrichment, and UCL Claims Fail to Comply with Rule 9(b)'s Heightened Pleading Requirement

The Court's prior Order Granting in Part and Denying in Part Defendants' Motion to Dismiss found Plaintiff's common law fraud, unjust enrichment, and UCL claims failed to comply with Rule 9(b)'s heightened pleading standard for fraud claims.  ECF 29 at 7. The Court instructed Plaintiff to amend the Complaint to add additional facts, including but not limited to, specific misleading statements which he saw and relied upon, information explaining why Defendants' statements were false when made, and "the who, what, when, where, and how" of the misconduct relating to the transfer of tokens from his wallet. *Id.*

Rule 9(b)'s heightened pleading requirement applies to Plaintiff's fraud, unjust enrichment and UCL claims because all are based on Defendants' allegedly fraudulent conduct involving the decentralized nature of the Pi Network and unauthorized transfer of Plaintiff's Pi tokens. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–4 (9th Cir. 2003) (a claim is "grounded in fraud" where "the plaintiff . . . allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," even "where fraud is not a necessary element of a claim").

Under California law, the elements of common law fraud are "a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damage." *Gil v. Bank of Am.*, 138 Cal. App. 4th 1371, 1381 (2006).  "Under the federal rules, a plaintiff alleging fraud 'must state with particularity the circumstances constituting fraud.'" *In re Arris Cable Modem Consumer Litig.*, No. 17-cv-01834-LHK, 2018 WL 288085, at *4 (quoting Fed. R. Civ. P. 9(b)).  "To satisfy this standard, the allegations must be 'specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Semegen v. Weidner*, 780 F.2d 727,

United States District Court
Northern District of California

731 (9th Cir. 1985)). "Thus, claims sounding in fraud must allege 'an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Id.* (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Specifically, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess*, 317 F.3d at 1106) (citation omitted). "The plaintiff must also plead facts explaining why the statement was false when it was made." *Id.* (citation omitted).

### i.     *Plaintiff Only Identified One Misleading Statement with Sufficient Specificity*

The TAC alleges that Plaintiff relied upon various statements from the 2019 Whitepaper which misrepresented that the Mainnet launch would be governed by the Pi Network community, community-operated validator nodes would be selected before launch, and the community would build 100 applications before launch to ensure it was decentralized. TAC ¶¶ 14[1] (quoting the Whitepaper, which states that "no central authority will be controlling the currency and it will be fully decentralized"), 19 ("Defendants overrode user security via centralization, contrary to Whitepaper promises"), 22 (noting Defendants made several purportedly "specific" operational commitments). The TAC also alleges reliance on in-app communications and an X Post. *Id.* ¶¶ 17 (citing an in-app notification which stated that "[y]ou are the sole owner of your Wallet's private key . . . never [*sic*] comes to Pi's servers"), 18 (same), 78(b) ("Defendants represented on July 22, 2022 via an official X (Twitter) post that they had no involvement in exchange listings, while privately coordinating those listings").

The TAC allegations fail to cure the deficiencies identified in the Court's prior Order which required Plaintiff to identify specific statements Plaintiff saw and relied upon

---

[1] This paragraph contains additional quotations from the Whitepaper including: "Build a cryptocurrency and smart contracts platform secured and operated by everyday people" and "Pi's consensus algorithm, described above, creates a native trust layer that scales trust on the web without intermediaries." TAC ¶ 14; ECF 48-1 at 2, 16. The TAC does not allege that Plaintiff relied on these statements or that they were false when made, so the Court omits them from its' analysis. *See TAC generally*.

to satisfy Rule 9(b)'s heightened pleading standard. While Plaintiff includes three specific quotations from the Whitepaper, he predominantly makes broad sweeping assertions purportedly concluded from the Whitepaper. *See* TAC ¶¶ 19 (vaguely referencing Defendants' conduct as "contrary to Whitepaper promises"), 22 (alleging "specific operational commitments" without citing specific Whitepaper paragraphs or pages), 78(b) (same), 78(d) ("The misrepresentations were disseminated through the Pi Network mobile application and website"); 78(e) (noting Defendants' use of "public statements" to induce Plaintiff to contribute time and effort to build the Pi Network). Plaintiff also fails to clarify which versions of the Whitepaper he viewed. *Id.* ¶ 78(c) (noting March 2019, December 2021, and March 2022 versions). These allegations fail to give Defendants reasonable notice regarding which specific statements are supposedly misrepresentations. *In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *4 ("allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged . . .") (internal quotations and citations omitted).

Plaintiff's allegations regarding misrepresentations stemming from in-app notifications he viewed fare no better. The TAC does not specify when he viewed the in-app notifications or provide the complete notification itself.[2] *Id.* ¶¶ 17 (including a partial quote and stating that he viewed said notification between 2021 through 2024), 18 (same). While Plaintiff has included the date of the X post he viewed, he fails to provide the actual language therein and it is not clear whether it has been attached to the TAC. These allegations are not specific enough to comply with Rule 9(b). So, Plaintiff has only identified one specific Whitepaper statement he allegedly relied upon which asserts that

---

[2] The Court will not scour the voluminous TAC exhibits to determine whether Plaintiff did attach the in-app notifications at issue. The TAC does not include citations to any exhibits. It is Plaintiff's responsibility to direct the Court to the relevant record. *See Bryant v. Kibler*, No. 2:21-cv-0060-TLN-DMC-P, 2023 WL 199277, at *1 n.1 (E.D. Cal. Jan. 17, 2023) ("it is the Court's duty to evaluate the factual allegations within a complaint, not to wade through exhibits in order to determine the basis for Plaintiff's claims"); *Jackson v. Akkano*, No. 1:13-cv-00009-DLB-PC, 2014 WL 1102718, at *5 (E.D. Cal. Mar. 14, 2014) ("the Court will not comb through the exhibits in search of support for [plaintiff's] allegations").

"no central authority will be controlling the currency and it will be fully decentralized." TAC ¶ 14. As discussed below, Plaintiff cannot state a claim for fraud based on this allegation.

### ii. Plaintiff Fails to Allege that Defendants' Statements were False When Made

Plaintiff must allege that Defendants' knew their statement that "no central authority will be controlling the currency and it will fully be decentralized" was false when made to state a claim for fraud. *Gil*, 138 Cal. App. 4th at 1381. Plaintiff alleges the statement was false because "the platform was centralized under Defendants' control through three validator nodes . . . with Defendants knowing this (as they designed/ operated the nodes)" and "Defendants knew they intended to maintain exclusive control over all validator nodes." TAC ¶¶ 14, 79.

Defendants contend this statement is not false because "Defendants expressly disclosed that they *would* host nodes and that the system would continue to invite *new* nodes on after gaining community support, but never promised when that development would occur." ECF 46 at 16 (emphasis in original).

The TAC's allegation that "no central authority will be controlling the currency and it will fully be decentralized" cannot form the basis of a fraud claim because it is a prediction about a future event. "[A]ctionable misrepresentation must be one of existing fact; predictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud." *Bernstein v. Apollo Group, Inc.*, No. 13-cv-01701-LHK, 2014 WL 4352309, at *5 (N.D. Cal. Sept. 2, 2014), *aff'd sub nom. Mary Helen v. Apollo Group, Inc.*, 652 Fed. Appx. 556 (9th Cir. 2016) (unpublished) (quoting *Cohen v. S & S Constr. Co.*, 151 Cal. App. 3d 941, 946 (1983)) (internal quotation marks omitted). Plaintiff cannot allege Defendants made a knowingly false misrepresentation about a future event involving unknown, potential third parties. Moreover, the Whitepaper's explicit text contradicts the purported falsity of this allegation. The Whitepaper states that the "Pi core team will host several nodes on the test net, but will

encourage more Pioneers to start their own nodes on the testnet [*sic*]." ECF 48-1 at 19. By acknowledging that there will be a central authority to initially build the network, the Whitepaper undermines Plaintiff's argument that such statement should be taken at face value and as more than what it is—a prediction about future action by some third parties.

There are exceptions to the rule regarding future predictions forming actionable misrepresentations where: "(1) one party holds himself out to be specially qualified and the other party reasonably relies upon the former's superior knowledge; (2) the opinion is by a fiduciary or other trusted person; or (3) a party states his opinion as an existing fact or as implying facts that justify a belief in the truth of the opinion." *Bernstein*, 2014 WL 4352309, at *5. The Court is not persuaded that Plaintiff could allege an exception if given the chance because he fails to satisfy the other required elements to state a claim grounded in fraud as stated below.[3] Also, as discussed in Section B, Plaintiff cannot state a fiduciary relationship with Defendants.

### iii. *Plaintiff Fails to Allege Intent to Defraud, Justifiable Reliance, or Damages*

Plaintiff has not explained how the Pi Network's decentralized nature demonstrates Defendants' intent to defraud. The TAC alleges that Defendants intended "to induce Plaintiff and other users to contribute time, effort, and resources to build the Pi Network platform, thus enriching Defendants." TAC ¶ 80. Cryptocurrency, however, "is the general term for encrypted, decentralized digital money based on blockchain technology." *U.S. v. Thompson*, 130 F.4th 1158, 1162 n.2 (9th Cir. 2025) (quoting *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1007 (9th Cir. 2023)). Plaintiff's allegations could apply to any cryptocurrency network which promoted its decentralized structure because, in Plaintiff's

---

[3] The Court is not inclined to give Plaintiff leave to amend because he unilaterally gave himself two such opportunities to do so without leave of Court. ECF 32, 36, 38. Despite two additional opportunities, Plaintiff's allegations remain conclusory and insufficient. *Ecological Rights Found. v. Pacific Gas and Electric Co.*, 713 F.3d 502, 520 (9th Cir. 2012) ("Although a district court should freely give leave [to amend] when justice so requires, the court's discretion to deny such leave is particularly broad where the plaintiff has previously amended its complaint.") Accordingly, the Court denies Plaintiff leave to amend.

United States District Court
Northern District of California

view, that feature intended to defraud users by attracting them to the network.  That allegation is far too conclusory to state a claim for fraud.

Plaintiff cannot demonstrate actual, justifiable reliance or damages on a prediction as to the future events involving third parties' conduct.  First, actual reliance is required to "establish a complete causal relationship between the alleged misrepresentations and the harm to have resulted therefrom."  *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007) (citations and quotations omitted).  Plaintiff has not, and cannot, plead a plausible correlation between Defendants' describing a future, idealized decentralized network and Plaintiff's mining activity, node operation, and token loss.  TAC ¶¶ 81–82.

Next, Plaintiff must allege justifiable reliance, "*i.e.*, circumstances were such to make it *reasonable* for [the] plaintiff to accept [the] defendant[s'] statements without an independent inquiry or investigation."  *OCM Principal Opportunities Fund*, 157 Cal. App. 4th at 864 (citation omitted) (emphasis in original).  "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience."  *Id.* (citation omitted).  The TAC asserts Plaintiff was a "user with no prior cryptocurrency experience who was specifically targeted by Defendants' plain-language marketing."  TAC ¶ 81.  But cryptocurrency inexperience does not excuse unfounded reliance on vague, future promises regarding action by unknown, unidentified third parties.  No reasonable person can conclude justifiable reliance from the Whitepaper statement that "no central authority will be controlling the currency and it will be fully decentralized."  TAC ¶ 14; *see Singh v. Google LLC*, No. 16-cv-03734-BLF, 2018 WL 984854, at *6 (N.D. Cal. Feb. 20, 2018) (quoting *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991)) ("Whether reliance was justified in a particular circumstance "'may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.'").  This is especially so given the Whitepaper's aspirational, lofty tone.  *See, e.g.*, ECF 48-1 at 2 (stating the paper's "vision" to "[b]uild the world's most inclusive peer-to-peer ecosystem" to be "operated by

everyday people.")  Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiff's first, third, and fourth claims grounded in fraud without leave to amend.

### B.    Plaintiff Fails to Allege a Fiduciary Relationship Existed

The Court's Order on Defendants' Motion to Dismiss the original complaint found Plaintiff's breach of fiduciary duty claim lacked facts regarding Defendants' involvement in migrating Plaintiff's tokens, selling two billion tokens, or listing Pi tokens in 2022. ECF 29 at 8.

The TAC alleges Defendants' Terms of Service (ToS) and their "exclusive, unilateral control over Plaintiff's assets" both created a fiduciary relationship.[4]  TAC ¶¶ 21, 86.  The TAC recites ToS provisions which state: "you are responsible for keeping and maintaining the security of your password," and "[i]f you have passed SocialChain's KYC process []and fulfilled other relevant requirements as set forth in these Terms, you may obtain Pi cryptocurrency in your Mainnet wallet [] on the Pi Mainnet Blockchain."  TAC ¶ 21; ECF 36-2 at 3, 6.

"In California, '[t]he elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach.'"  *Fabian v. LeMahieu*, No. 19-cv-00054-YGR, 2019 WL 4918431, at \*10 (N.D. Cal. Oct. 4, 2019) (quoting *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 932 (2011)).  "[B]efore a person can be charged with a fiduciary obligation, he must either undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law."  *Id.* (citation omitted). Fiduciary relationships as a matter of law include those between, for example, "principal and agent, including real estate broker/agent and client," "partners," "joint venturers," or

---

[4] The TAC contains several allegations that the "securities-like nature of Pi tokens" increases Defendants' fiduciary obligations because it is essentially "an investment contract."  TAC ¶ 53–56, 86.  The Court's prior Motion to Dismiss Order found that Pi Tokens do not constitute a security and dismissed Plaintiff's Securities Act claims, so the Court disregards these allegations and Plaintiff's arguments on this basis.  ECF 29 at 3–4.

"trustee and trust beneficiary." *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 632–33 (2005) (internal citations omitted).

The TAC fails to establish the existence of a fiduciary duty between Defendants and Plaintiff. No fiduciary relationship exists here as a matter of law. *Oakland Raiders*, 131 Cal. App. 4th 632–33. The TAC's cited ToS provisions do not establish that Defendants undertook to act on Plaintiff's behalf. *Fabian*, 2019 WL 4918431, at *10. To the contrary, as Defendants note, the ToS makes clear that users are responsible for account security. ECF 46 at 22; ECF 36-2 at 3 ("you are responsible for keeping and maintaining the security of your password" and "you acknowledge and agree that SocialChain is not liable for any loss or damage"). The ToS does not promise that token transfer will occur after KYC completion, instead noting the user "*may* obtain Pi cryptocurrency." ECF 36-2 at 6 (emphasis added). "[Plaintiff's] mere placing of trust in [Defendants] does not create a fiduciary relationship." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 246 (2007) (citation omitted). Moreover, "under California law, a contract, without more, does not create a fiduciary relationship." *Song Fi, Inc. v. Google, Inc.*, No. C 14-5080 CW, 2016 WL 1298999, at *8 (N.D. Cal. Apr. 4, 2016) (quoting *Oakland Raiders*, 131 Cal. App. 4th at 633–34) (finding allegations that ToS formed fiduciary relationship to be a legal conclusion insufficient to establish fiduciary relationship). Plaintiff has failed to allege what beyond the ToS itself created a fiduciary relationship.

Plaintiff's allegation that Defendants exercised "unilateral control over his assets" also does not establish a fiduciary relationship.[5] TAC ¶ 86. Plaintiff does not cite any persuasive case law supporting his theory. *See* ECF 50 at 17–18 (citing *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445 (1998) (breach of

[5] Plaintiff attempts to rely on the same caselaw he cited in opposition to Defendants' first Motion to Dismiss, *Bhatia v. Silvergate Bank*, 725 F. Supp. 3d 1079, 1121 (S.D. Cal. 2024). ECF 24. The Court already found *Bhatia* distinguishable because the allegations there included contract clauses, public representations, and solicitations that supported a fiduciary relationship. ECF 29 at 8. Plaintiff again fails to allege similar facts to support such a claim.

11

fiduciary duty claim properly alleged between broker and a trust's beneficiaries when broker colluded with trustee); *Herbert v. Lankershim*, 9 Cal. 2d 409, 483 (1937) (jury instruction vaguely discussing confidential relationships); *Hodges v. Cnty. of Placer*, 41 Cal. App. 5th 537, 546–51 (2019) (no fiduciary relationship arose from county's statutory duty to deposit proceeds in a trust)).  Further, the ToS make clear that Plaintiff is "the exclusive holder of [his] account and Mainnet Wallet."  ECF 36-2 at 9.  Plaintiff cannot base a fiduciary relationship on these allegations.  Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's breach of fiduciary duty claim without leave to amend.

## IV.    CONCLUSION

Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's TAC without leave to amend.  The Court orders that judgment be entered in favor of the Defendants.

**IT IS SO ORDERED.**

Dated:  May 13, 2026

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California