# EXHIBIT C





DELFINO
MADDEN
O'MALLEY
COYLE
KOEWLER

500 Capitol Mall Suite 1550
Sacramento, CA 95814
(916) 661-5700 f. 661-5701
delfinomadden.com

Kenneth P. Nabity
knabity@delfinomadden.com
d. (916) 661-5704

May 13, 2025

<u>**Via Email Only**</u>

Mario Tafur
Bulldog Law, PC
500 N. Central Ave. Suite 610
Glendale, CA 91203
[mariotafur@thebulldog.law](mailto:mariotafur@thebulldog.law)

Re:     *Harro Moen v. Pi Community Company, SocialChain Inc., Nicolas Kokkalis, and
Chengdiao Fan*

Counsel:

Our office represents Pi Community Company, SocialChain Inc., Nicolas Kokkalis, and
Chengdiao Fan (collectively, "Pi").

On April 14, 2025, your office sent a letter demanding that Pi pay $10,000,000 directly to your
client, Harro Moen. In that letter, you represented that Mr. Moen "filed a draft class action
complaint in the United States District Court for the Northern District of California (Harro Moen
v. SocialChain Inc., et al., Cast No. To Be Assigned)," and stated that failure to pay the
$10,000,000 would result in you filing "Expanded Litigation" that seeks "tens of billions of
dollars" for some undefined class. When I inquired about this filing, you confirmed that you, in
fact, have not filed a complaint for Mr. Moen while alluding to the existence of some "prepared
pleading," which you have not shared.

Mr. Moen's demand letter identifies no wrongdoing, much less a potential cause of action
against Pi. Perhaps recognizing the futility of any potential claims, the demand letter instead
resorts to repeated threats, including of "significant regulatory scrutiny" and "irreparable
reputational damage" from the lawsuit, and your repeated threat to "publicize" the lawsuit. Such
baseless threats reveal that this campaign is nothing more than a frivolous shakedown attempt.

## I.     Mr. Moen's Factual Allegations Are Baseless.

Pi denies Mr. Moen's factual claims. Mr. Moen's allegations suffer from too many deficiencies
to address in this response, and thus we will focus on only a few here. First, Mr. Moen appears

to allege harm from an "unauthorized transfer of 5,137.397257 tokens to an unknown wallet on April 10, 2024," suggesting that is part of some wider "misallocation of user mined assets." Pi had nothing to do with that or any other "misallocated" transfer, and Mr. Moen fails to state any facts suggesting otherwise. If you have any facts that suggest Pi had anything to do with any improper transfer, please provide them.

Second, Mr. Moen claims that Pi was involved in "unauthorized exchange listings." Mr. Moen's allegation is baseless. Prior to February 2025, Pi users, including its founders and employees, were unable to engage in transactions beyond the Pi ecosystem. Given this, Pi tokens could not be valued on major exchanges as they were unable to be traded on the open market. During this time, malicious sites preyed on vulnerable users through fake and unauthorized trading. As most sites admitted, and you acknowledge here, there was no "native" Pi tokens on these sites. Pi spent tremendous time and resources attempting to protect its users from these unauthorized sites. As your demand letter acknowledges, Pi confirmed alleged listings of Pi were "fake," expressly dismissed all valuations on such sites, and warned users of potential losses. Pi's statements were true and appropriate. Mr. Moen states no facts to suggest otherwise.

Where the letter does allege facts, those only confirm that Pi had no involvement with those unauthorized exchanges. Mr. Moen admits that XT.COM marked deposits and withdrawals of Pi token as "'To Be Determined' . . . suggesting the use of futures or IOUs rather than native tokens;" these facts establish only that there were *no native Pi tokens* on XT.COM. Mr. Moen also acknowledges that the Huobi prices were "disconnected from any ecosystem utility," confirming that no reasonable person would rely on them. And the letter notes that Bitmart listings, which Pi expressly decried as "fake," had similarly ludicrous trading activity. Mr. Moen has no facts suggesting that a single native Pi token was traded on any exchange prior to February 2025.

Third, Mr. Moen's reliance now on these admittedly fake and unauthorized valuations for purposes of his damages calculations defies common sense. Those "valuations" were bogus then, and reliance on them is bogus now, both legally and factually.

## II.    Mr. Moen's Potential Legal Claims Are Meritless As A Matter Of Law.

Mr. Moen's fundamental misrepresentations or misconceptions doom all potential claims. First, Mr. Moen identifies no misstatement or omission that could give rise to potential claims pursuant to the Securities Act of 1933, 15 U.S.C. §§77e, 77l, the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b-5, or the Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX"). To the contrary, Mr. Moen acknowledges that Pi dismissed as "fake" the unauthorized trading sites. Second, Mr. Moen's claim under SOX fails because the identified section only applies to protect whistleblower employees of companies registered under section 12 of the Securities Exchange Act. Pi is not a registered company and Mr. Moen was never its employee. Third, Mr. Moen's allegations that Pi misrepresented itself in its whitepaper are meritless, and, even if he could (which he cannot) Mr. Moen asserts no harm from validators or any such representation thus dooming the common law fraud cause of action. Fourth, Mr. Moen's misallocation of his wallet was not Pi's fault. Mr. Moen is welcome to provide any information that would support the

allegation of misallocation by Pi, but all facts thus far indicate user error.  Fifth, Mr. Moen has not identified any benefits that Pi retained to the detriment of Mr. Moen or any other class member.

\*        \*        \*

Due to the insurmountable factual and legal deficiencies, Pi declines Mr. Moen's demand and declines to make a counteroffer.

If you would like to discuss any of the above or provide additional information concerning Mr. Moen's claims, please do not hesitate to reach out.  In the meantime, I trust that you and your firm are current on the ethical and legal obligations concerning any potential advertising.

Sincerely,

DELFINO MADDEN O'MALLEY COYLE & KOEWLER LLP

Kenneth P. Nabity