# EXHIBIT G

# Yesica Lopez

| | |
|---|---|
| **From:** | Kenneth P. Nabity |
| **Sent:** | Wednesday, April 8, 2026 11:30 AM |
| **To:** | Mario Tafur; Jennifer Munguia |
| **Cc:** | Yesica Lopez; Esmeralda Mendoza; Emily McAtee; Tallulah Bajar; Jennifer Munguia |
| **Subject:** | RE: Moen v. Pi Community Company, et al.: First Amended Complaint Issues |
| **Attachments:** | document (13).pdf |

Mr. Tafur,

Your Third Amended Complaint makes reference to Pi owing me/my prior firm $50,000 in "outstanding fees" at some point in the process. It mentions that the Declaration is attached, but it is not attached.

Is the attached declaration the one you are referencing? In it, I note that Pi has *incurred* fees, but I am missing where it says that there are "outstanding fees"? Did you just make that up?

You also claim that Kokkalis "bounced" a $86 check, but none of those documents establish that he wrote that check (as opposed to a courier acting on behalf of my prior firm following our successful defense and appeal of the case brought by Mr. McPhillip). Did you make that up, too?

Setting aside that this side quest into prior litigation is irrelevant to any claims from Mr. Moen, and only renders your pleadings more incoherent, the Court has cautioned you against fabricating authority or citations, or providing false statements to the Court, in this matter and your matter against Coinbase. Every passing pleading seems to make matters worse for you.

You'll get an opportunity to oppose our Motion to Dismiss, which we will file soon – please be sure to read your opposition closely and stop repeating these (and other) falsehoods.

Thanks,
Ken

**Kenneth Nabity** | Partner
**FOLSOM JACKSON O'MALLEY LLP**
knabity@folsomjackson.com | d. 916.661.5704
500 Capitol Mall, Suite 1550 | Sacramento, CA 95814
**New name. Same firm.**
Folsom Jackson carries Delfino Madden's legacy forward.

**CONFIDENTIALITY NOTICE**: This electronic communication and any accompanying document(s) may be confidential and privileged. If you received this transmission in error, please immediately notify the sender by return e-mail or by calling 916-661-5700 and delete it from your system. Thank you.

**From:** Mario Tafur <mario@thebulldog.law>
**Sent:** Wednesday, March 11, 2026 5:12 PM
**To:** Kenneth P. Nabity <knabity@delfinomadden.com>; Jennifer Munguia <jenniferm@thebulldog.law>
**Cc:** Yesica Lopez <ylopez@delfinomadden.com>; Esmeralda Mendoza <emendoza@delfinomadden.com>; Emily McAtee <emcatee@delfinomadden.com>; Tallulah Bajar <tbajar@delfinomadden.com>; Jennifer Munguia <jenniferm@thebulldog.law>
**Subject:** Re: Moen v. Pi Community Company, et al.: First Amended Complaint Issues

[EXTERNAL]

Good afternoon,

I have been traveling and in and of court today.  My staff has clearly acted in error here.  I will clarify everything in the morning.  My apologies for the confusion.

Best regards,

Mario P. Tafur | Attorney

OFFICE: (855) 216-3990 | FAX: (323) 967-7155
EMAIL: mario@thebulldog.law |  WEBSITE: www.thebulldog.law  |  YOUTUBE CHANNEL I
https://www.youtube.com/@TheBulldogLaw

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately. IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, please be advised that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Kenneth P. Nabity <knabity@delfinomadden.com>
**Sent:** Wednesday, March 11, 2026 4:48 PM
**To:** Mario Tafur <mario@thebulldog.law>; Jennifer Munguia <jenniferm@thebulldog.law>
**Cc:** Yesica Lopez <ylopez@delfinomadden.com>; Esmeralda Mendoza <emendoza@delfinomadden.com>; Emily McAtee <emcatee@delfinomadden.com>; Tallulah Bajar <tbajar@delfinomadden.com>
**Subject:** RE: Moen v. Pi Community Company, et al.: First Amended Complaint Issues

Mario,

It appears that you filed both an opposition to our motion to dismiss the second amended complaint and a third amended complaint today on behalf of Mr. Moen.  First, your opposition notes that it was "prior counsel's failure" to incorporate evidence that rendered the SAC deficient.  I am confused – are you referring to yourself as "prior counsel?"  Second, you filed the third amended complaint without written agreement or leave from the Court, in violation of FRCP 15(a)(2).  Are you going to move for leave to amend, will you file a notice of withdrawal, or will we need to file a motion to strike (assuming the Court does not act on its own)?

Ken

**Kenneth P. Nabity** | Partner
**Delfino Madden O'Malley Coyle & Koewler LLP**
knabity@delfinomadden.com | d. 916.661.5704
500 Capitol Mall, Suite 1550 | Sacramento, CA 95814

**From:** Mario Tafur <mario@thebulldog.law>
**Sent:** Wednesday, February 11, 2026 7:04 PM
**To:** Kenneth P. Nabity <knabity@delfinomadden.com>; Jennifer Munguia <jenniferm@thebulldog.law>
**Cc:** Yesica Lopez <ylopez@delfinomadden.com>; Esmeralda Mendoza <emendoza@delfinomadden.com>; Emily McAtee <emcatee@delfinomadden.com>; Tallulah Bajar <tbajar@delfinomadden.com>
**Subject:** RE: Moen v. Pi Community Company, et al.: First Amended Complaint Issues

**[EXTERNAL]**

Dear Mr. Nabity,

Thank you for your email.  The case cite you are quite right was in error and was a vestige of an earlier draft based on some early research.  That has been adjusted.  The quotes, although very close to what is in the TOS were not word for word, and we have made that correction as well.  We have also included the TOS as an exhibit as well as a few more.  In terms of what we are alleging, we  believe it is quite clear.  Our client made every effort to resolve this issue with Pi Network through their support staff.  These diligent efforts were unsuccessful, and despite Pi Network having exclusive control over the ecosystem in which its token occupies, offered him no relief.  It is unfortunate that you find nothing wrong with the mistreatment of our client, and that you find that pointing out this mistreatment warrants sanctions.  This appears to be a tactic to scare and dissuade our client and his counsel from attempting to right this wrong, and endorses a position in which your client can act with impunity, treating with disdain those that literally and simply did what your clients presumably want everyone to do:  sign up to their app and mine for Pi tokens.   That's not a position we can  endorse.

Best regards,

Mario P. Tafur | Attorney

OFFICE: (855) 216-3990 | FAX: (323) 967-7155
EMAIL: mario@thebulldog.law |  WEBSITE: www.thebulldog.law  |  YOUTUBE CHANNEL I
https://www.youtube.com/@TheBulldogLaw

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately. IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, please be advised that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used or relied upon, and cannot be used or relied upon, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**From:** Kenneth P. Nabity <knabity@delfinomadden.com>
**Sent:** Monday, February 9, 2026 5:30 PM
**To:** Mario Tafur <mario@thebulldog.law>; Jennifer Munguia <jenniferm@thebulldog.law>
**Cc:** Yesica Lopez <ylopez@delfinomadden.com>; Esmeralda Mendoza <emendoza@delfinomadden.com>; Emily McAtee <emcatee@delfinomadden.com>; Tallulah Bajar <tbajar@delfinomadden.com>
**Subject:** Moen v. Pi Community Company, et al.: First Amended Complaint Issues

Dear Mr. Tafur:

We are in receipt of Mr. Moen's First Amended Complaint ("FAC"), filed last week.  The FAC continues Mr. Moen's frivolous campaign against my clients, which began with your extortionate demands for $10 million.  There is no reason that this case was ever brought, or that it should continue.  In anticipation of the Court's consideration of sanctions pursuant to the PSLRA and Federal Rule of Civil Procedure 11, we need the following information.

**First**, the FAC states that it is attaching "Defendants' Terms of Service," dated February 19, 2025, as Exhibit A, but the FAC does not include an attachment.  The FAC then claims to quote from two sections of the Terms of Service.  (*See* FAC at p. 10, ?? 21 and 20 [sic].)  Specifically, the FAC states that Terms of Service, paragraph 4, states: "Users are responsible for maintaining the security of their account passwords, and Pi Network employs measures to protect user assets."  (Id.)  The FAC also states that the Terms of Service, paragraph 12, states: "Migrated Pi is deposited into the user's designated Mainnet wallet."  (Id.)  As best we can tell, neither of those are quotes from the Terms of Service, and there is certainly no statement from which one could infer that anyone has assumed an obligation to "protect user assets."  Please send us the Terms of Service containing the direct quotes you included in the FAC.  If there is a discrepancy, explain why that is.

**Second**, the FAC cites to "*Kelly v. Coinbase Global, Inc.*, No. 3:21-cv-06010 (N.D. Cal. 2021)" to state that "the court upheld UCL claims for fraudulent business practices in cryptocurrency platforms involving misleading security representations and user harm."  (FAC ? 20.)  Your purported citation, of course, is to a docket, not a decision, but, even still, there is nothing on that docket that would support your assertion.  After all, the docket reflects that the parties stipulated to stay the matter and attend arbitration; there was not even a challenge to the pleading, much less any holding about UCL claims.  Please explain what is happening there, as it appears you are hallucinating authority.

**Third**, it remains unclear what your client contends that my clients did with respect to the alleged unauthorized transfer.  Indeed, the drafting of the FAC appears deliberately inconsistent and evasive.  In some places, Mr. Moen alleges that Defendants conduct amounts to "enabling the unauthorized transfer" (FAC ? 36), that Defendants "used their validator nodes to execute the transaction without Plaintiff's passphrase or approval" (id. ? 21), and then finally that Defendants are liable for "causing or enabling the unauthorized transfer" (id. ? 40).  What, specifically, does Mr. Moen accuse my clients of doing?  Did they actually steal his tokens?  Did they fail to put appropriate safeguards in place?  Does Mr. Moen still not know?  As any reasonable attorney would conclude with a basic inquiry, Mr. Moen has no evidentiary support for any of these claims – his reckless speculation is not enough.

These are not new issues.  We plan to move this matter forward expeditiously to mitigate the amount of fees and costs sought in our request for sanctions.  Thus, we look forward to your written response not later than the close of business on **Wednesday, February 11, 2026**.

Sincerely,
Ken

**Kenneth P. Nabity** | Partner
**Delfino Madden O'Malley Coyle & Koewler LLP**
knabity@delfinomadden.com | d. 916.661.5704
500 Capitol Mall, Suite 1550 | Sacramento, CA 95814

**CONFIDENTIALITY NOTICE**:  This electronic communication and any accompanying document(s) may be confidential and privileged.  If you received this transmission in error, please immediately notify the sender by return e-mail or by calling 916-661-5700 and delete it from your system.  Thank you.

**CONFIDENTIALITY NOTICE**:  This electronic communication and any accompanying document(s) may be confidential and privileged.  If you received this transmission in error, please immediately notify the sender by return e-mail or by calling 916-661-5700 and delete it from your system.  Thank you.

# Attachment document (13)

21CV391680
Santa Clara – Civil

R. Burciaga

TROY A. VALDEZ (State Bar No. 191478)
KENNETH P. NABITY (State Bar No. 287927)
WILLIAM ABRAMOVITZ (State Bar No. 319385)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone:    415.391.4800
Facsimile:    415.989.1663
Email:        ef-tav@cpdb.com
              ef-kpn@cpdb.com
              ef-wia@coblentzlaw.com

Attorneys for Defendants
DR. NICOLAS KOKKALIS and
DR. CHENGDIAO FAN, and Nominal
Defendant PI COMMUNITY COMPANY

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 9/13/2022 4:32 PM
Reviewed By: R. Burciaga
Case #21CV391680
Envelope: 9954815**

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

| | |
|---|---|
| VINCENT McPHILLIP, an individual,<br><br>Plaintiff,<br><br>v.<br><br>DR. NICOLAS KOKKALIS, an individual;<br>and DR. CHENGDIAO FAN, an individual,<br><br>Defendants.<br><br><br>PI COMMUNITY COMPANY,<br>a Cayman Islands entity,<br><br>Nominal Defendant. | Case No. 21CV391680<br><br>**DECLARATION OF KENNETH P. NABITY IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR AN ORDER REQUIRING PLAINTIFF TO FURNISH A BOND UNDER CORPORATIONS CODE § 800 AND/OR AN UNDERTAKING PURSUANT TO CODE OF CIVIL PROCEDURE § 1030**<br><br>*[Filed concurrently with (1) Notice of Motion; (2) Supporting Memorandum; and (3) Fan Declaration]*<br><br>Judge:<br>Date:<br>Time:<br>Dept.:<br><br>Action Filed:  November 23, 2021<br>Trial Date:    None Set |

1

Case No. 21CV391680

**NABITY DECLARATION IN SUPPORT OF DEFENDANTS'
RENEWED MOTION REQUIRING A BOND AND/OR AN UNDERTAKING**

I, Kenneth P. Nabity, declare:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner with Coblentz Patch Duffy & Bass LLP, attorneys of record for Defendants Dr. Nicolas Kokkalis and Dr. Chengdiao Fan, and Nominal Defendant Pi Community Company ("Defendants").  I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true.  If called as a witness, I could and would competently testify to the matters stated herein.

2.      Plaintiff Vincent McPhillip originally sued Pi Community Company, Dr. Chengdiao Fan, Dr. Nicolas Kokkalis, and SocialChain, Inc. on July 22, 2020, in this Court, Case No. 20CV368601.  After Defendants filed a demurrer, but before the Court heard the demurrer, Plaintiff amended his complaint to allege causes of action for wrongful termination/ constructive discharge, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing.  Defendants again demurred.  On April 16, 2021, the Court sustained Defendants' demurrer without leave to amend as to all causes of action.  A true and correct copy of the Order Re: Demurrer to Amended Complaint, signed on April 13, 2021, by the Honorable Christopher G. Rudy, and filed on April 16, 2021, is attached hereto as **Exhibit A**.

3.      As of the date of this declaration, a judgment in Defendants' favor is currently pending before the Court for that first matter.

4.      Defendants have already incurred substantial attorneys' fees and costs defending against this Subsequent Action.  Defendants have already prepared two versions of this motion for bond and/or undertaking, plus supplemental briefings, attended two hearings, and prepared and filed a demurrer and motion to strike.  To date, Defendants have already incurred over $50,000 in attorneys' fees.

5.      If this matter gets beyond the pleading stage, Defendants will incur even more fees and costs resulting from discovery.  Plaintiff has already served Defendant Nicolas Kokkalis with Requests for Production of Documents and Special Interrogatories, and Defendants will serve written discovery at some point when the matter is not stayed.  Defendants also expect that the parties will take no fewer than six depositions of parties and third parties.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

2                                    Case No. 21CV391680

**NABITY DECLARATION IN SUPPORT OF DEFENDANTS'**
**RENEWED MOTION REQUIRING A BOND AND/OR AN UNDERTAKING**

6.       Defendants also anticipate filing a dispositive motion.

7.       It is my reasonable projection that Defendants will incur greater than $200,000 in fees through discovery and dispositive motions.  Should the case require trial, that number could potentially double, depending on the scope of the claims still at issue.

8.       A $50,000 bond will ensure that adequate funds are available to reimburse Defendants for their attorneys' fees in defending against this action.  Moreover, in the unlikely event that Plaintiff succeeds in this action, the bond will be refunded to him.  Although a $50,000 bond likely will not cover all of Defendants' attorneys' fees and costs in defending against this derivative claim, it would provide substantial protection from a claim that is unlikely to succeed.

9.       Given the above, I reasonably anticipate that defense of this action will result in Defendants spending in excess of $20,000 in recoverable costs.  Such costs include, but are not limited to, substantial filing fees, deposition video and transcript costs, and costs for preparation of trial.  This estimate is based on comparable cases on which I have recently worked and received an award of costs.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on September 13, 2022, at San Francisco, California.

_____
KENNETH P. NABITY

Case No. 21CV391680

**NABITY DECLARATION IN SUPPORT OF DEFENDANTS'
RENEWED MOTION REQUIRING A BOND AND/OR AN UNDERTAKING**

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# Exhibit A

F I L E D

APR 16 2021

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

D. O'Hara

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

| | |
|---|---|
| VINCENT McPHILLIP,<br><br>Plaintiff,<br><br>v.<br><br>DR. NICHOLAS KOKKALIS, et al.;<br><br>Defendants. | Case No. 20CV368601<br><br>ORDER RE: DEMURRER TO AMENDED COMPLAINT |

Defendants Dr. Nicholas Kokkalis, Dr. Chengdiao Fan, Pi Community Company and SocialChain, Inc.'s (collectively, "Defendants") demurrer to the Amended Complaint ("AC") filed by plaintiff Vincent McPhillip ("Plaintiff") came on for hearing before the Honorable Christopher G. Rudy on April 8, 2021, at 9 a.m. in Department 7. The matter having been submitted, the Court orders as follows:

**I.  Background**

**A.  Factual**

This is an action for wrongful termination/constructive discharge. According to the allegations of the AC, at all relevant times, Plaintiff was employed as CEO of Pi and its wholly owned subsidiary, Social, which was engaged primarily in the creation and management of a mobile application involving blockchain technology. (AC, ¶¶ 2, 6, 8, 9.) Kokkalis and Fan were

1

ORDER RE: DEMURRER TO AMENDED COMPLAINT

employed by Social as its Chief Technology Officer and President, and Chief Product Officer, respectively. (*Id.*, ¶ 9.) Plaintiff, Kokkalis and Fan, who are husband and wife, co-founded Pi and agreed to split ownership of the company equally. (*Id.*, ¶ 10.)

Pi raised money from third parties by selling "Simple Agreement for Future Equity" or "SAFE" instruments, which are essential a prepaid warrant to purchase stock. (AC, ¶ 14.) They are prepaid because the terms of the stock, including its price, are determined at a later date based on a sale to later investors at a price and terms those investors determine. (*Id.*, ¶ 15.) SAFEs contain a maximum valuation or "cap" which protects investors against the issue being too successful and selling the next investment for too high a price relative to the early purchase date. (*Id*, ¶ 16.) Pi sold SAFE instruments at a $20 million valuation cap in September 2019. (*Id.*, ¶ 18.) Subsequent to that, Pi and Social made significant progress in the amount of users of its products. (*Id*, ¶¶ 20-23.)

Fan and Kokkalis suffered from marital issues which often played out at work. (AC, ¶ 24.) In January 2020, Plaintiff confronted them about such conduct and advised them that it posed an existential threat to Pi and Social. (*Id.*) Although Fan and Kokkalis promised that it would stop, it did not, with Plaintiff witnessing shouting matches and acts of physical aggression between them. (*Id.*, ¶¶ 24-27.) After an especially egregious fight on March 6, 2020, Kokkalis contacted Plaintiff and demanded that he make a decision to work with him or Fan. (*Id.*) A subsequent attempt at reconciliation by Kokkalis and Fan devolved into another fight, with both parties threatening to break up the team, likely ending Pi and Social. (*Id.*, ¶ 28.) Kokkalis and Fan became increasingly hostile towards Plaintiff, to such an extent that it impeded his ability to perform his job and he sought mental health counseling. (*Id.*, ¶¶ 29-30.) Their issues also

ORDER RE: DEMURRER TO AMENDED COMPLAINT

affected morale among their employees and put the very existence of the company in jeopardy. (*Id.*, ¶¶ 35-37.)

In April 2020, Plaintiff raised his concerns with Fan about what considered to be her abusive and bullying behavior. (AC, ¶ 39.) Kokkalis, informed by Fan of what had occurred, subsequently phoned Plaintiff and asked him to apologize to Fan or he would be forced to choose between her and Plaintiff. (*Id*, ¶ 40.) Kokkalis stated that if Plaintiff did not retract his words, "there will be no company." (*Id.*) Plaintiff did not apologize or retract his words. (*Id.*, ¶ 41.)

As a result of Kokkalis and Fan's conduct, Plaintiff was placed on medical leave and told not to contact them during that time. (AC, ¶ 43.) Kokkalis and Fan ignored his medical situation and insisted that he communicate with them. (*Id.*, ¶ 44.) Kokkalis and Fan subsequently fired him as CEO of Pi and Social, declaring that Plaintiff had "abandoned his post" and "effectively resigned." (*Id.*, ¶ 46.) They terminated his access to Pi/Social servers and Pi's bank account, which meant that he could no longer perform essential company functions as both CEO and as director of the company. (*Id.*, ¶¶ 46-49.) Despite the foregoing, Fan and Kokkalis nevertheless asked for his assistance in securing the services of an IP consultant, a task he had been working on prior to his firing. (*Id.*, ¶¶ 50, 53.) In order to compel Plaintiff's help, Kokkalis and Fan implicitly threatened to dilute Plaintiff's equity interest in the companies and ultimately did so. (*Id.*, ¶¶ 54-56.) Subsequent efforts by the parties to resolve their disputes were unsuccessful, resulting in the instant action.

**B. Procedural**

Plaintiff initiated the instant action with the filing of the original complaint on July 22, 2020, which asserted the follow claims: (1) wrongful termination/constructive discharge; (2) negligent infliction of emotional distress ("NIED"); (3) intentional infliction of emotional

3

ORDER RE: DEMURRER TO AMENDED COMPLAINT

distress ("IIED"); and (4) breach of fiduciary duty. After Fan and Kokkalis filed a demurrer to the complaint, Plaintiff filed the AC asserting the following causes of action: (1) wrongful termination/constructive discharge (against Kokkalis, Social and Fan); (2) breach of fiduciary duty (against Kokkalis and Fan); and (3) breach of the implied covenant of good faith and fair dealing (against Pi).

On January 15, 2021, Defendants filed the instant demurrer to the AC and each of the claims asserted therein on grounds of failure to state facts sufficient to constitute a cause of action and uncertainty. (Code Civ. Proc., § 430.10, subds. (e) and (f).) Plaintiff opposes the motion.

## II. Defendants' Demurrer

### A. Uncertainty

Unless a complaint is so unintelligible that a defendant cannot reasonably respond, a demurrer on the ground of uncertainty should be overruled. (See *Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 139, fn.2 [stating that "where the complaint contains substantive factual allegations sufficiently apprising defendant of the issues it is being asked to meet, a demurrer for uncertainty should be overruled"]; see also *Khoury v. Maly's of Calif., Inc.* (1993) 14 Cal.App.4th 612, 616 [stating that a demurrer should not lie where "even where a complaint is in some respects uncertain, because ambiguities can be clarified under modern discovery procedures"].)

Here, the AC is far from unintelligible, with the nature of Plaintiff's claims sufficiently clear. Accordingly, Defendants' demurrer to the AC and each of the three causes of action asserted therein on the ground of uncertainty is OVERRULED.

4

ORDER RE: DEMURRER TO AMENDED COMPLAINT

## B. Failure to State Sufficient Facts

### 1. *Wrongful Termination/Constructive Discharge (1st Cause of Action)*

Defendants first assert that no claim for wrongful termination or constructive discharge has been stated for the following reasons: (1) Plaintiff fails to plead facts sufficient to establish constructive discharge; (2) Plaintiff fails to plead any "wrongful" conduct; and (3) Plaintiff fails to plead facts sufficient to establish that he suffered any harm.

Under California law, while employment is generally considered at-will, the courts have created "a narrow exception to this rule by recognizing that an employer's right to discharge an at-will employee is subject to limits fundamental public policy imposes." (*Green v. Ralee Engineering Co.* (1998) 18 Cal.4th 66, 71.) Wrongful termination claims of this type, also known as "*Tameny*" claims, can be stated where, among other things, the plaintiff employee alleges that he or she engaged in conduct that is protected by a public policy that is fundamental, beneficial for the public, and embodied in a statute, regulation, or constitutional provision. (*Id.*; see also *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1095 [explaining in a wrongful termination claim, the public policy at issue must be tethered to "statutes and constitutional provisions"].) With regard to constructive discharge, "an employee who is forced to resign due to actions and conditions so intolerable or aggravated at the time of his resignation that a reasonable person in the employee's position would have resigned, and whose employer had actual or constructive knowledge of the intolerable actions and conditions and of their impact upon the employee and could have remedied the situation, but did not, is constructively discharged." (*Zilmer v. Carnation Co.* (1989) 215 Cal.App.3d 29, 38.) Critically, "[a]bsent a contract of employment, express or implied, the employee [who alleges that he was constructively discharged] must *also* show, as in *all* tortious wrongful termination cases, that the actions and conditions that caused

5

ORDER RE: DEMURRER TO AMENDED COMPLAINT

the employee to resign were violation of public policy." (*Id.*, emphasis added and internal citation omitted; *see also Starzynski v. Capital Public Radio* (2001) 88 Cal.App.4th 33, 40 [holding that at-will plaintiff had no claim for wrongful discharge based on a constructive discharge where he failed to show that he had been terminated for a reason that "contravene[s] fundamental public policy as expressed in a constitutional or statutory provision"].)

Here, the Court agrees with Defendants that Plaintiff has failed to plead the "wrongful" component of his claim because he has not identified a public policy that is "fundamental, beneficial for the public, and embodied in a statute, regulation, or constitutional provision" that was violated by his termination. In his opposition, Plaintiff insists that he has pleaded such conduct by establishing the independent torts of IIED and NIED, but not only are those claims no longer being asserted by him, but even if they were, neither is embodied in a "statute, regulation, or constitutional provision." This failure is fatal to Plaintiff's claim and therefore the Court need not evaluate the merits of Defendants' other arguments. As Plaintiff has not demonstrated how he can amend his pleading to correct the foregoing defect, as is his burden (see *Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349), Defendants' demurrer to the first cause of action on the ground of failure to state facts sufficient to constitute a cause of action is SUSTAINED WITHOUT LEAVE TO AMEND.

### 2. *Breach of Fiduciary Duty (2nd Cause of Action)*

In the second cause of action, Plaintiff alleges that Kokkalis and Fan, directors of Pi, knowingly acted against his interests as a shareholder by selling shares of Pi to themselves below their fair market value. (AC, ¶¶ 77-78.)

Defendants first assert that this claim fails because under Cayman law, Plaintiff has no standing to assert such a claim. Defendants refer to Cayman law apparently as the controlling

6

ORDER RE: DEMURRER TO AMENDED COMPLAINT

law of Pi, a Cayman Islands entity. However, there is nothing before the Court which establishes that the law of the Cayman Islands is controlling here. Defendants continue, however, that even under California law, Plaintiff still lacks standing to assert this claim. Specifically, Defendants maintain that Plaintiff's claim is derivative in nature and therefore he cannot assert it in his individual capacity as he has attempted to do here.

As a general matter, shareholders may bring two types of actions, "a *direct* action filed by the shareholder individually (or on behalf of a *class* of shareholders to which he or she belongs) for injury to his or her interest *as a shareholder*," or a "*derivative* action filed on *behalf of the corporation* for *injury to the corporation* for which it failed or refused to sue." (*Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 311-312, emphasis in original, internal citation omitted.) "The two actions are mutually exclusive: i.e., the right of action and recovery belongs either to the *shareholders* (direct action) or to the *corporation* (derivative action)." (*Ibid.*) "When the claim is derivative, the shareholder is merely a nominal plaintiff .... Even though the corporation is joined as a nominal defendant ..., it is the real party in interest." (*Ibid.*, internal citations and quotations omitted.)

Here, Defendants insist that this claim is derivative in nature because it is predicated on allegations that they elected to sell shares of Pi below their fair value and thus the resulting injury, the receipt by Pi of less than it otherwise should have received from the sale of the shares, is to the company and *not* Plaintiff directly. In making this argument, Defendants attempt to draw parallels between the facts at bar and the case of *Schuster v. Gardner, supra.* In *Schuster*, a shareholder brought an action against corporate officers for breach of fiduciary duty and the trial court entered a judgment of dismissal after it sustained a demurrer on the ground that the action was derivative in nature and thus the shareholder lacked standing to sue. Among other things,

7

ORDER RE: DEMURRER TO AMENDED COMPLAINT

the plaintiff alleged that the subject corporation's articles of incorporation were amended to increase the outstanding number of shares by a significant amount, thereby diluting his (and others) ownership interest, while others received proportionate increases at the same time. The appellate court affirmed, concluding that the gravamen of the plaintiff's suit was harm to the corporation and thus could only be brought derivatively.

The Court finds Defendants' argument persuasive because the harm resulting from an issuance "below the fair value" of Pi shares to them is harm to *Pi*, which would not receive that which it should otherwise receive. Plaintiff's assertion in his opposition that he has standing to assert this claim as a direct action because Kokkalis and Fan, two other shareholders, "ganged up" on him is unavailing. The Court does not dispute the viability of Plaintiff's allegation that he suffered injury as a result of Defendants' actions, but believes that that injury is merely incidental to the harm suffered by Pi. In such circumstances, Plaintiff lacks standing to bring this action and any recovery, should one be available, is owed to Pi and not him. As Plaintiff has failed to articulate how he can correct this deficiency in his claim, Defendants' demurrer to the second cause of action on the ground of failure to state facts sufficient to constitute a cause of action is SUSTAINED WITHOUT LEAVE TO AMEND.

3. *Breach of the Implied Covenant of Good Faith and Fair Dealing (3rd Cause of Action)*

In his remaining claim, Plaintiff alleges that Pi breached the implied covenant of good faith and fair dealing by "enter[ing] into a dilutive financing in bad faith." (AC, ¶ 86.) Defendants assert that this claim fails because it is merely a transparent attempt by Plaintiff to circumvent the standing issue he has with the preceding claim. Indeed, the third cause of action appears to be essentially identical to the second for breach of fiduciary duty, with the harm alleged to have occurred being suffered primarily by Pi, with Plaintiff's injury being incidental to

8

ORDER RE: DEMURRER TO AMENDED COMPLAINT

that. Moreover, Plaintiff has not alleged that the conduct at issue violated any term of any specified agreement between him and Pi or his rights thereunder, and the implied covenant "cannot be endowed with an existence independent of its contractual underpinnings …. [and] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349-350, internal citations omitted.) Once again, Plaintiff fails to explain how he can amend the AC to correct the deficiencies in this claim. Accordingly, Defendants' demurrer to the third cause of action on the ground of failure to state facts sufficient to constitute a cause of action is SUSTAINED WITHOUT LEAVE TO AMEND.

Date: 4/13/21

_____
The Honorable Christopher G. Rudy
Judge of the Superior Court

ORDER RE: DEMURRER TO AMENDED COMPLAINT



# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SANTA CLARA
DOWNTOWN COURTHOUSE
191 NORTH FIRST STREET
SAN JOSÉ, CALIFORNIA 95113
CIVIL DIVISION



F I L E D

APR 1 6 2021

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

D. O'Hara

RE:            **Vincent McPhillip vs Nicolas Kokkalis et al**
Case Number:   **20CV368601**

### PROOF OF SERVICE

**ORDER RE: DEMURRER TO AMENDED COMPLAINT** was delivered to the parties listed below the above entitled case as set forth in the sworn declaration below.

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line (408) 882-2690 or the Voice/TDD California Relay Service (800) 735-2922.

**DECLARATION OF SERVICE BY MAIL:** I declare that I served this notice by enclosing a true copy in a sealed envelope, addressed to each person whose name is shown below, and by depositing the envelope with postage fully prepaid, in the United States Mail at San Jose, CA on April 16, 2021. CLERK OF THE COURT, by Donna O'Hara, Deputy.

**cc:**    Michael William Prozan  851 N San Mateo Dr Suite C  San Mateo CA  94401-2283
Troy A Valdez  Coblentz Patch Duffy & Bass LLP  One Montgomery Street Suite 3000  SAN FRANCISCO CA 94104

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PROOF OF SERVICE**

*Vincent McPhillip vs. Dr. Nicolas Kokkalis, et al.*
Santa Clara County Superior Court Case No. 20CV391680

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over eighteen years of age and not a party to this action. I am employed in the County of San Francisco, State of California. My business address is One Montgomery Street, Suite 3000, San Francisco, California 94104-5500.

On September 13, 2022, I served true copies of the foregoing document described as

**DECLARATION OF KENNETH P. NABITY IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR AN ORDER REQUIRING PLAINTIFF TO FURNISH A BOND UNDER CORPORATIONS CODE § 800 AND/OR AN UNDERTAKING PURSUANT TO CODE OF CIVIL PROCEDURE § 1030**

on the interested parties in this action as follows:

Attorneys for Plaintiff Vincent McPhillip:

Ethan J. Brown, Esq.
Sara C. Colón, Esq.
BROWN NERI SMITH & KHAN LLP
11601 Wilshire Boulevard, Suite 2080
Los Angeles, California 90025
Telephone: (310) 593-9890
Facsimile: (310) 593-9980
E-Mail:      ethan@bnsklaw.com
                 sara@bnsklaw.com
                 task@bnsklaw.com

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused a copy of the document to be sent from e-mail address rbrown@coblentzlaw.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 13, 2022, at Salt Lake City, Utah.

_____
Robert Brown

019244.0001 4886-7471-0065.1

Case No. 21CV391680

**NABITY DECLARATION IN SUPPORT OF DEFENDANTS'
RENEWED MOTION REQUIRING A BOND AND/OR AN UNDERTAKING**