Mario Tafur, Esq. (SBN: 329899)
mario@thebulldog.law
**BULLDOG LAW, P.C.**
500 N. Central Avenue, Ste. 610
Glendale, CA 91203
Telephone: (949) 649-3007
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HARRO MOEN<br><br>Plaintiff(s),<br><br>vs.<br><br>SOCIALCHAIN INC., PI COMMUNITY COMPANY, NICOLAS KOKKALIS, CHENGDIAO FAN, and DOES 1-50,<br>Defendant(s). | Case No.: 5:25-cv-09145-NC<br><br>**PLAINTIFF'S COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE REGARDING RULE 11 SANCTIONS** |

**I. INTRODUCTION**

Plaintiff's counsel Mario Tafur respectfully submits this response to the Court's July 9, 2026 Order to Show Cause (ECF 60) and in opposition to Defendants' July 23, 2026 Motion for Sanctions (ECF 62).

The Court's Order directs counsel to show cause regarding compliance with Federal Rule of Civil Procedure 11(b) "in conjunction with the filing of any complaints" in this action. ECF 60 at 2. Counsel addresses only that limited inquiry as directed by the Court.

After reasonable pre-filing inquiry, the Complaint and subsequent amended complaints were filed in good faith, advanced nonfrivolous legal contentions in a developing area of law, and rested on factual contentions supported by Plaintiff's personal experience, public offering documents, contractual terms of service, and publicly available blockchain data. The ultimate dismissal of Plaintiff's claims does not establish a Rule 11 violation. Moreover, Defendants' formal Motion for Sanctions is procedurally defective under Rule 11(c)(2) and controlling Ninth Circuit authority.

The Court should find that Plaintiff's counsel complied with Rule 11(b) as to the complaints filed in this action and deny Defendants' Motion for Sanctions.

## II. THE SCOPE OF THE INQUIRY IS LIMITED TO THE COMPLAINTS

### A. The Court Has Limited This Inquiry to the Complaints

The Private Securities Litigation Reform Act requires specific findings regarding compliance with Rule 11(b) "as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1). Consistent with that statutory directive, the Court's Order to Show Cause expressly cabins the present inquiry to "Plaintiff's Rule 11(b) compliance in conjunction with the filing of any complaints." ECF 60 at 2.

This carefully defined scope reflects the mandatory nature of PSLRA review and focuses the inquiry on the pleadings themselves, not on subsequent litigation conduct or advocacy positions taken in other contexts.

### *B. Arguments Outside This Scope Should Be Disregarded*

Defendants' Motion for Sanctions repeatedly ventures beyond the complaints into matters including:

1. Alleged deficiencies in later briefing and opposition memoranda;
2. Pre-suit correspondence and settlement demands;
3. Discovery disputes; and

4. Other post-complaint conduct.

These matters fall outside the scope of the Court's Order. To the extent the Court previously addressed issues concerning briefing accuracy or procedural compliance, those matters were resolved through prior admonitions. This proceeding is not an occasion to relitigate resolved issues or expand the inquiry beyond the pleadings the Court identified.

**III. DEFENDANTS' MOTION IS PROCEDURALLY DEFECTIVE**

*A. Rule 11's Safe Harbor Requirement Is Mandatory*

Rule 11(c)(2) establishes a mandatory safe-harbor procedure for sanctions motions. A motion for sanctions "must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." Fed. R. Civ. P. 11(c)(2).

The Ninth Circuit "enforce[s] [Rule 11's] safe harbor provision strictly" and will "reverse the award of sanctions when the challenging party failed to comply with the safe harbor provisions, even when the underlying filing is frivolous." *Holgate v. Baldwin*, 425 F.3d 671, 678 (9th Cir. 2005). The safe-harbor requirement is not discretionary; it is a precondition to filing a sanctions motion with the court.

*B. Defendants Failed to Provide a Meaningful Safe Harbor*

In this case:

1. Judgment was entered and the file closed on May 13, 2026;
2. Counsel's motion to withdraw was conditionally granted on July 9, 2026, with the Court retaining jurisdiction solely for PSLRA Rule 11 review; and
3. Defendants filed their formal Motion for Sanctions on July 23, 2026.

By the time Defendants filed their formal motion, there was no operative pleading left to withdraw or correct. The case had been dismissed, judgment entered, and no live claims remained

pending. A post-judgment motion that affords no meaningful opportunity to cure is inconsistent with the purpose and strict requirements of the safe-harbor provision.

*C. The PSLRA Mandatory Review Does Not Cure the Procedural Defect*

The PSLRA's court-initiated review under 15 U.S.C. § 78u-4(c) does not itself require the 21-day safe harbor. But Defendants chose to file a formal "Motion for Sanctions" under ordinary Rule 11 procedures. That choice subjects the motion to Rule 11(c)(2)'s requirements.

Defendants cannot sidestep the safe-harbor rule by filing a formal motion after judgment when the Court has already begun its own PSLRA review. The motion is procedurally defective and should be denied on that ground alone

## IV. THE COMPLAINTS COMPLIED WITH RULE 11(b)

Even on the merits, counsel satisfied each element of Rule 11(b). The rule requires that, to the best of counsel's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:

1. the filing is not presented for any improper purpose;
2. the legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;
3. the factual contentions have evidentiary support or are likely to have evidentiary support after reasonable discovery; and
4. the denials of factual contentions are warranted on the evidence.

Counsel met each of those requirements.

*A. No Improper Purpose (Rule 11(b)(1))*

The complaints were not presented for any improper purpose. Plaintiff sought redress for claimed losses arising from multi-year participation in Defendants' platform, an alleged

unauthorized transfer of tokens, and public representations concerning the nature and value of the digital asset program.

Pre-suit communication with Defendants, including settlement demands and references to potential legal exposure or regulatory interest, constitutes ordinary and protected advocacy. Such communications do not transform a subsequently filed lawsuit into an improper-purpose filing. Counsel investigated Plaintiff's claimed losses, the circumstances of the alleged unauthorized token transfer, and Defendants' public representations before filing the initial Complaint.

The fact that Plaintiff ultimately did not prevail on the merits does not establish improper purpose. Plaintiff sought legitimate relief for claimed economic harm.

*B. Legal Contentions Were Nonfrivolous (Rule 11(b)(2))*

1. The Securities Claims Advanced Nonfrivolous Legal Theories

The original Complaint advanced claims under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, alleging that Defendants' digital token constituted a security under the test established in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946).

Applying *Howey* to novel digital assets especially those involving mobile-app mining, enclosed-network tokens, and representations about future decentralization and Mainnet launches remains a contested and evolving area. Courts, the SEC, and market participants continue to debate the boundaries of securities regulation in this space.

While the Court ultimately determined that Plaintiff's securities claims were not viable as pleaded, the legal contentions were not so lacking in foundation that no reasonable attorney could have advanced them. Counsel reasonably relied on the *Howey* framework, SEC guidance concerning digital assets, and public statements by Defendants concerning the token's investment characteristics.

2. The Common-Law Claims Were Supported by Nonfrivolous Legal Arguments

Following dismissal of the securities claims, the Third Amended Complaint reframed related theories as common-law fraud, unjust enrichment, breach of fiduciary duty, and claims under California's Unfair Competition Law (Business and Professions Code § 17200 et seq.).

Each of these claims rested on allegations that Defendants made material misrepresentations concerning the nature, value, and timeline for transfer of the digital tokens, and that Plaintiff relied on those representations to his detriment. The legal theories were grounded in established California common law and statutory authority.

The Court's conclusion that the claims failed as pleaded does not establish that the legal contentions were frivolous. Reasonable attorneys can and do advance good-faith arguments concerning the application of fraud, fiduciary duty, and unfair competition principles to emerging technologies and business models. Losing a motion to dismiss does not equal a Rule 11 violation.

*C. Factual Contentions Had Evidentiary Support (Rule 11(b)(3))*

The core factual allegations underlying each complaint rested on multiple sources of evidentiary support:

1. Plaintiff's Personal Experience: Plaintiff joined the Pi Network, engaged in mining activity over multiple years, completed Know Your Customer (KYC) verification, and experienced what he believed to be an unauthorized transfer of tokens he had mined.
2. Public Offering Documents: Counsel reviewed and relied upon the publicly available 2019 Pi Network Whitepaper, which described the project's architecture, governance model, and roadmap toward decentralization and Mainnet launch.
3. Terms of Service and User Agreements: Counsel reviewed the contractual terms governing user participation in the network.
4. Blockchain Data: Publicly visible blockchain data on Pi Network explorers provided information concerning token supply, distribution, and transaction history.

5. Project Communications: Public statements, announcements, and communications by Defendants and the Pi Network project provided representations concerning timelines, milestones, and the nature of user participation.

Counsel's interpretation of the Whitepaper's language concerning decentralization, community governance, and Mainnet timelines was a good-faith reading advanced to support Plaintiff's claims. The Whitepaper described mechanisms by which community members would participate in governance and value creation, language that counsel reasonably interpreted as supporting claims of an investment contract or contractual relationship.

Reasonable minds can differ on the import of these documents and the weight to be given to particular statements. Disagreement with the Court's ultimate construction does not establish fabrication or absence of evidentiary support.

Before filing, counsel possessed evidentiary support for the core factual assertions in the complaints. The representations were documented in public materials; Plaintiff's participation and claimed losses were based on his personal experience; and the alleged unauthorized transfer was reported by Plaintiff as having occurred. Whether these facts ultimately supported viable legal claims is a merits question distinct from whether counsel had evidentiary support at the time of filing.

*D. The Standard Is Objective Reasonableness, Not Success on the Merits*

The Rule 11(b) inquiry is objective: whether a reasonable attorney, conducting a reasonable pre-filing inquiry, could have filed the complaints in good faith. The standard is not whether the claims should have succeeded or whether, with the benefit of hindsight and full merits adjudication, the claims appear weak.

Courts repeatedly emphasize that sanctions are appropriate only when a filing is objectively frivolous, when no reasonable attorney could have advanced the claims. Mere failure to prevail, even on a motion to dismiss, does not satisfy that standard.

Here, counsel confronted a developing area of law, novel facts, and public representations that could reasonably be interpreted to support Plaintiff's claims. The complaints advanced legal theories grounded in established doctrine applied to emerging circumstances. That application ultimately did not persuade the Court, but it was not objectively unreasonable when undertaken.

**V. PSLRA CONTEXT SUPPORTS A FINDING OF COMPLIANCE**

The original securities claims were dismissed early in the litigation. The operative Third Amended Complaint pursued common-law and statutory theories that do not fall within the core securities-fraud claims the PSLRA was primarily designed to deter.

While the Court has elected to conduct PSLRA review of this action, the nature of the claims arising from a novel digital-asset context, pursued in part under non-securities theories, and grounded in public documents and Plaintiff's personal experience, further underscores that the complaints were not the type of abusive strike suits the PSLRA was enacted to prevent.

In any event, the operative standard remains objective reasonableness under Rule 11(b), not a post-hoc determination that the claims should have succeeded or that another attorney might have declined to file them.

**IV. CONCLUSION**

The Court's inquiry is limited to whether Plaintiff's counsel complied with Rule 11(b) in connection with the filing of the complaints in this action. Counsel conducted a reasonable pre-filing inquiry, advanced nonfrivolous legal contentions in a developing area of law, presented factual contentions supported by Plaintiff's experience and public documents, and did not present the pleadings for any improper purpose.

Dismissal of Plaintiff's claims on the merits does not establish a Rule 11 violation. Defendants' formal Motion for Sanctions is further barred by failure to comply with Rule 11(c)(2)'s mandatory safe-harbor requirements.

Plaintiff's counsel respectfully requests that the Court:

1. Find that Plaintiff and Plaintiff's counsel complied with Rule 11(b) as to all complaints filed in this action;
2. Deny Defendants' Motion for Sanctions (ECF 62) as procedurally defective and without merit; and
3. Decline to impose any sanctions under Rule 11 or the Private Securities Litigation Reform Act.

DATED: August 6, 2026

*/s/ Mario Tafur*
Mario Tafur
Attorney for Plaintiff

**ROOF OF SERVICE**

I, Jennifer Munguia, am employed in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to this action. My business address is 500 N. Central Ave., Ste. 610 Glendale, CA 91203.

ON AUGUST 6, 2026, I SERVED THE WITHIN DOCUMENT DESCRIBED AS: RESPONSE TO OSC

| | |
|---|---|
| _x___ **BY FIRST CLASS MAIL**<br>____ by placing a true copy thereof enclosed in a sealed envelope for deposit with the United States Postal Service, with postage thereon fully prepaid, addressed as follows: | ___ **BY PERSONAL SERVICE**<br><br>____ I delivered a true copy of the aforesaid document by hand to the addressee(s) or the addressee's office.<br><br>____ I caused a true copy of the aforesaid document to be delivered by hand to the offices of the addressee(s) |
| _X___**VIA ELECTRONIC MAIL TO:**<br><br>Kenneth P. Nabity<br>knabity@folsomjackson.com | ____ **VIA FACSIMILE**<br><br>__ I caused a true copy of the aforesaid document to be transmitted to the recipient at the facsimile machine number last given by that person on a document which that person has filed in the cause and served on the person making this service. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on a August 6, 2026, at Glendale, California.

Signature:__Jennifer Munguia______________________